[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

————————————————

No. 02-14434
Argument Calendar

————————————————
D. C. Docket No. 01-01663-CV-T-30-MSS

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
November 28, 2003
THOMAS K. KAHN
CLERK

GRANITE STATE OUTDOOR ADVERTISING, INC.,

Plaintiff-Appellant,

versus

CITY OF CLEARWATER, FLORIDA,
BRIAN AUNGST, SR., as an individual
and in his capacity as Mayor of the city,
WILLIAM HORNE, as an individual and
in his capacity as city manager,

Defendants-Appellees.

————————————————

Appeal from the United States District Court
for the Middle District of Florida

————————————————

**(November 28, 2003)**

Before ANDERSON and BIRCH, Circuit Judges, and PROPST*, District Judge.

_____
        *Honorable Robert B. Propst, United States District Judge for the Northern District of
Alabama, sitting by designation.

BIRCH, Circuit Judge:

In this appeal, we must determine whether the district court properly denied plaintiff-appellant's, Granite State Outdoor Advertising, Inc. ("Granite State"), request for injunctive relief against defendant-appellee, the City of Clearwater, Florida ("the City" or "Clearwater"), after several permit applications to construct billboards in the City were denied under Article 3, Division 18 of the City's Community Development Code ("the Code"). The district court ruled that Granite State had standing to challenge the *entirety* of Article 3, Division 18, but not any part of Article 4, the part of the Code that governs the permit denial appeals process. The district court denied injunctive relief based on its ruling that, after unconstitutional provisions of Division 18 were severed from the remainder of the ordinance, the remaining provisions were constitutional. Upon consideration, we AFFIRM in part, REVERSE in part, and REMAND.

## I. BACKGROUND[1]

Granite State is a Georgia corporation in the business of buying or leasing land upon which to construct signs and billboards to be used for both commercial and non-commercial purposes. Granite State has never erected or operated a billboard, nor has it held a permit in its own name to erect a billboard. Granite State receives its profits from the sale of billboard permits it obtains from various

[1]The facts in this case that we relate are undisputed.

cities and municipalities, some of which have been obtained through litigation similar to the case before us.

Clearwater is a political subdivision of the state of Florida and describes itself as a "resort community on the west coast of the state with more than five miles of beaches on the Gulf of Mexico" and with a tourism-based economy. Clearwater Cmty. Dev. Code § 3-1801 (1999). Clearwater, like many other cities, has codified various sign regulations to create a comprehensive scheme for regulating, inter alia, the permitting, placement, number, size, height, design, operation, and maintenance of signs within the City's boundaries. Id. §§ 3-1801 - 1807 (2003). The many purposes of these sign regulations include traffic safety and aesthetics of the community. Id. § 3-1802 (1999).

Granite State entered into lease agreements for a total of eight parcels of real property located in commercial or industrial areas of Clearwater. Granite State's goal was to construct and operate one freestanding billboard sign on each parcel of property. The City denied each of Granite State's permit applications because Granite State applied to construct billboards more than four times the allowable height and ten times the allowable area under Clearwater regulations. Rather than appeal the denial of its permits, Granite State initiated the current litigation in the Middle District of Florida challenging the constitutionality of Article 3, Division

18 and Article 4 of Clearwater's Community Development Code on First Amendment grounds and requesting injunctive relief.[2]

Article 3, Division 18 regulates both commercial and non-commercial signs and dictates when permits are required before certain signs may be erected. In particular, § 3-1806 regulates "[p]ermitted signs requiring development review." Part B.1. of this section deals with non-residential, freestanding signs, and it was under this part of § 3-1806 that Granite State's permits were denied. Specifically, subparts (c) and (e) of § 3-1806.B.1. dictate the allowable area and height, respectively, of a freestanding sign. Article 4 sets forth the process for obtaining various levels of permit approval and also details the appeals process to contest denial of a permit.

The district court granted Granite State standing to challenge the *entirety* of Article 3, Division 18 on First Amendment grounds, both as applied and under the overbreadth doctrine, and denied it standing to challenge any part of Article 4 on either ground. Because we find the district court misapplied the overbreadth

---

[2]Initially, Granite State also requested injunctive relief from Clearwater Mayor, Brian Aungst, Sr., and its City Manager, William Horne. The district court dismissed Granite State's claims against these defendants both in their individual and official capacities. This dismissal was not challenged on appeal; therefore, the only remaining defendant before us is the City of Clearwater. Additionally, Granite State has not appealed the district court's rulings regarding its claims that the Clearwater ordinance violates the Fourteenth Amendment guarantee of equal protection and the Fifth Amendment's Takings Clause. Accordingly, these issues are not before us: "Issues not clearly raised in the briefs are considered abandoned." Hardwick v. Crosby, 320 F.3d 1127, 1158 n.140 (11th Cir. 2003) (citations omitted).

4

doctrine, we reverse the district court's grant of standing to Granite State to challenge provisions of the City's sign ordinance that did not give rise to an injury in fact (i.e., provisions other than § 3-1806.B.1.), and we remand this case for further proceedings consistent with this opinion. We affirm the district court's denials of (1) standing to challenge any part of Article 4, (2) injunctive relief, and (3) attorney's fees.

## II. DISCUSSION

A. <u>Standing</u>

Article III, § 2 of the United States Constitution requires that there be a "case" or "controversy" before a federal court may decide a case. U.S. CONST. art. III, § 2. <u>See, e.g.</u>, <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 559-60, 112 S. Ct. 2130, 2136 (1992). The constitutional requirements for a federal court to adjudicate a case are accompanied by prudential requirements. <u>See, e.g.</u>, <u>Bennett v. Spear</u>, 520 U.S. 154, 162, 117 S. Ct. 1154, 1161 (1997); <u>Lujan</u>, 504 U.S. at 560, 112 S. Ct. at 2136. Together, these constitutional and prudential requirements form the doctrine of standing. <u>See, e.g.</u>, <u>Bennett</u>, 520 U.S. at 162, 117 S. Ct. at 1161; <u>Lujan</u>, 504 U.S. at 560, 112 S. Ct. at 2136.

The Supreme Court has identified three constitutional requirements for standing, all of which must be satisfied: (1) an injury in fact, meaning an injury

that is concrete and *particularized*, and actual or imminent, (2) a causal connection between the injury and the causal conduct, and (3) a likelihood that the injury will be redressed by a favorable decision.[3] <u>See, e.g.</u>, <u>Bennett</u>, 520 US. at 167, 117 S. Ct. at 1163. The Court also has identified three prudential standing principles. <u>See, e.g.</u>, <u>Allen v. Wright</u>, 468 U.S. 737, 751, 104 S. Ct. 3315, 3324 (1984). Relevant here is the principle that a party generally may assert only his or her own rights and cannot raise the claims of third parties not before the court. <u>See, e.g.</u>, <u>id.</u>

Certain exceptions to the *prudential* standing requirements have developed in Supreme Court jurisprudence. Significant to this case is the "overbreadth doctrine," an exception that applies in First Amendment cases involving non-commercial speech and that permits third-party standing when a statute is *constitutionally* applied to the litigant but might be *unconstitutionally* applied to third parties not before the court. <u>See, e.g.</u>, <u>Village of Schaumburg v. Citizens for a Better Env't</u>, 444 U.S. 620, 634, 100 S. Ct. 826, 834-35 (1980). The overbreadth doctrine, however, is not an exception to the *constitutional* standing requirements. <u>Bischoff v. Osceola County, Fla.</u>, 222 F.3d 874, 884 (11th Cir. 2000). A plaintiff

---

[3]Because these requirements are jurisdictional, we must consider them as a threshold matter, regardless of whether the parties or the court below has done so. <u>Focus on the Family v. Pinellas Suncoast Transit Auth.</u>, __ F.3d __, __ (11th Cir. 2003). Once we determine that the standing requirements have been met, we review the district court's denial of injunctive relief under the abuse of discretion standard, but "we review <u>de novo</u> determinations of law made by the district court en route." <u>Kidder, Peabody & Co., Inc. v. Brandt</u>, 131 F.3d 1001, 1003 (11th Cir. 1997).

seeking to make an overbreadth challenge must first show that he has suffered an injury in fact, as required under Article III. See, e.g., Virginia v. Am. Booksellers Ass'n Inc., 484 U.S. 383, 392-93, 108 S. Ct. 636, 642-43 (1988); Village of Schaumburg, 444 U.S. at 634, 100 S. Ct. at 834; Bischoff, 222 F.3d at 884.

An "injury in fact" requires the plaintiff to "show that he *personally* has suffered some actual or threatened injury." Valley Forge Christian College v. Americans United for Separation of Church and State, 454 U.S. 464, 472, 102 S. Ct. 752, 758 (1982) (emphasis added) (internal quotations omitted). While this requirement is hard to define precisely, we know that the plaintiff must at least claim to *personally* suffer some harm. See, e.g., Lujan, 504 U.S. at 562-63, 112 S. Ct. at 2137-38; United States v. Students Challenging Regulatory Agency Procedure (SCRAP), 412 U.S. 669, 686-87, 93 S. Ct. 2405, 2415 (1973).

1. Division 18, § 3-1806.B.1. of the Clearwater Community Development Code

In this case, the only harm that Granite State has personally suffered is under § 3-1806.B.1. of the Clearwater Community Development Code. It was under this provision that Granite State's billboard permits were denied. Granite State has suffered no injury regarding any other provision in Article 3, Division 18. Thus, Granite State has standing to challenge the constitutionality of *only* § 3-1806.B.1.

as applied to it and, under the overbreadth doctrine, as applied to non-commercial speech.

This provision was constitutionally applied to Granite State: it sought to construct a billboard sign *much* larger than any sign allowed under the Clearwater regulations. Moreover, because § 3-1806.B.1. is content-neutral and gives no discretion to the permitting authority, this provision is not overbroad.[4] See, e.g., Staub v. Baxley, 355 U.S. 313, 322, 78 S. Ct. 277, 282 (1958); Horton v. City of St. Augustine, 272 F.3d 1318, 1331-32 (11th Cir. 2001). Thus, Granite State's constitutional challenge to § 3-1806.B.1. must fail. This issue is remanded to the district court for further proceedings consistent with this opinion.

2. Article 4 of the Clearwater Community Development Code

Granite State does not have standing to challenge Article 4 of the Code because it has suffered no injury with regard to the City's permitting and appeals process.[5] Granite State argues that it did not avail itself of the allegedly

---

[4]Granite State has alleged that this provision is a prior restraint on speech because a permit is required before a billboard may be erected. This section is not a prior restraint, however, for the same reasons why an overbreadth challenge will fail: it is content-neutral and gives no discretion to the permitting authority. See, e.g., Staub v. Baxley, 355 U.S. 313, 322, 78 S. Ct. 277, 282 (1958); Horton v. City of St. Augustine, 272 F.3d 1318, 1332 (11th Cir. 2001).

[5]We note that while 42 U.S.C. § 1983 forms the statutory jurisdictional basis for Granite State's claim, § 1983 is not a substitute for the constitutional standing requirements. Section 1983 allows a plaintiff to bring a claim into court without exhausting state administrative appeals. See, e.g., Patsy v. Bd. of Regents of State of Fla., 457 U.S. 496, 518, 102 S. Ct. 2557, 2559-60 (1982). It does not, however, permit a plaintiff to challenge an appeals process that the

unconstitutional appeals process because the ordinance does not contain sufficient procedural safeguards. The specific constitutional defect, according to Granite State, is the fact that City officials have an unlimited amount of time to decide whether to grant or deny a permit application. Such an argument, by itself, does not create Article III standing. Granite State has neither alleged nor shown how the City's permitting and appeals procedure has injured Granite State. To the contrary, the record shows that Granite State's permits were denied within a reasonable time: the same day they were submitted. See, e.g., United States v. Hays, 515 U.S. 737, 745, 115 S. Ct. 2431, 2436 (1995) (holding that only those voters residing in an allegedly unconstitutionally drawn voting district have standing to challenge the unconstitutionality of the voting district); Sierra Club v. Morton, 405 U.S. 727, 739, 92 S. Ct. 1361, 1368 (1972) (affirming "[t]he requirement that a party seeking review must allege facts showing that he is himself adversely affected").

We note that this case is distinguishable from a line of Supreme Court cases involving (but not beginning with) City of Lakewood v. Plain Dealer Publ'g Co., 486 U.S. 750, 755-56, 108 S. Ct. 2138, 2140 (1988), and precedent from our circuit relying on the same, allowing litigants to facially challenge a licensing

plaintiff chose to forego without showing any actual or potential harm caused by the challenged appeals process.

9

scheme vesting the decision-maker with unbridled discretion.[6] See, e.g., FW/PBS,

Inc. v. City of Dallas, 493 U.S. 215, 223-24, 110 S. Ct. 596, 603-04 (1990); United

States v. Frandsen, 212 F.3d 1231, 1235-36 (11th Cir. 2000); Gold Coast Publ'ns,

Inc. v. Corrigan, 42 F.3d 1336, 1343 (11th Cir. 1994); Dimmitt v. City of

Clearwater, 985 F.2d 1565, 1570 (11th Cir. 1993); Abramson v. Gonzalez, 949

F.2d 1567, 1573 (11th Cir. 1992); Sentinel Communications Co. v. Watts, 936

F.2d 1189, 1197-98 (11th Cir. 1991).

In Lakewood, the city mayor was given unguided discretion to decide which

publishers could place newsracks on public property and where they could be

placed. 486 U.S. at 753-54, 108 S. Ct. at 2142. The Court held that such

unbridled discretion in the permitting official "constituted a prior restraint and may

result in censorship." Id. at 757, 108 S. Ct. at 2144. The Court then granted the

plaintiff standing to facially challenge this defect in the ordinance. Id. at 755-56,

108 S. Ct. at 2143.

Similar to the challenged permitting scheme in this case, the ordinance in

Lakewood also did not contain time limits within which the Mayor had to decide

whether to grant or to deny a permit. Id. at 771, 108 S. Ct. at 2151-52. The

---

[6]To the extent any of our prior decisions allowed facial standing (1) without first determining whether the litigant was entitled to as-applied standing or (2) without mentioning or discussing standing at all, such cases are inapposite to the present case.

majority noted, however, that "[e]ven if judicial review were relatively speedy, such review cannot substitute for concrete standards to guide the decision-maker's discretion." Id., 108 S. Ct. at 2151. Thus, time limits are required when their lack could result in *censorship* of certain viewpoints or ideas, see, e.g., Freedman v. Maryland, 380 U.S. 51, 58-59, 85 S. Ct. 734, 739 (1965), but are not categorically required when the permitting scheme is content-neutral. Thomas v. Chicago Park Dist., 534 U.S. 316, 322-24, 122 S. Ct. 775, 780-81 (2002). See also Granite State Outdoor Adver., Inc. v. City of St. Petersburg, ___ F.3d ___, ___ (2003) (noting that, "In particular, . . . the Court never stated time limits were per se required for a [content-neutral] permitting scheme to be valid. Rather, the Court simply held all that was required were 'adequate standards to guide the official's discretion and render it subject to judicial review.'") (citations omitted)).

The Clearwater Community Development Code gives no similar discretion to the permitting authorities as existed in cases such as Lakewood. City officials can only process a permit application and decide to grant or deny the permit based on specific, objective criteria (e.g., the height, size, or surface area of a proposed sign). Moreover, we note that the litigants in Lakewood, who were allowed to facially challenge an ordinance on the ground that it gave permitting authorities unbridled discretion, were injured under the very provisions they challenged.

11

<u>Lakewood</u>, 486 U.S. at 754, 108 S. Ct. at 2142. As we have explained, this is not the circumstance for Granite State, which suffered no injury in fact under Article 4.[7]

The judgment of the district court denying Granite State standing to challenge Article 4 both as applied and facially under the overbreadth doctrine is, therefore, affirmed.

B. <u>Mootness</u>

Like the requirement of standing, mootness is a justiciability doctrine that must be satisfied before we may decide a case. <u>See, e.g.,</u> <u>United States Parole Comm'n v. Geraghty</u>, 445 U.S. 388, 396-97, 100 S. Ct. 1202, 1208-09 (1980). We lack jurisdiction because of mootness "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." <u>Powell v. McCormack</u>, 395 U.S. 486, 496, 89 S. Ct. 1944, 1951 (1969). In this case, the City argues that Granite State's claims are now moot because Clearwater has revised the Code in accordance with the district court's decision. Because Granite State has requested damages, however, the changes made to the ordinance do not make this

---

[7]Moreover, as noted in <u>Granite State Outdoor Adver., Inc. v. City of St. Petersburg</u>, it is possible that the "City officials could potentially delay the processing of certain permit applications and thereby arbitrarily suppress disfavored speech." ___ F.3d ___, ___ (11th Cir. 2003). Because we find Granite State lacks standing to challenge Article 4, we find that such "abuse must be dealt with if and when a pattern of unlawful favoritism appears." <u>Id.</u> at ___ (quoting <u>Thomas</u>, 534 U.S. at 325, 122 S. Ct. at 781).

12

case moot. See, e.g., Firefighter's Local Union No. 1784 v. Stotts, 467 U.S. 561, 571, 104 S. Ct. 2576, 2584 (1984); Havens Realty Corp. v. Coleman, 455 U.S. 363, 371, 102 S. Ct. 1114, 1120 (1982); see also Mesquite v. Aladdin's Castle, Inc., 455 U.S. 283, 289, 102 S. Ct. 1070, 1074 (1982) ("repeal of the objectionable language would not preclude [Clearwater] from reenacting precisely the same provision if the District Court's judgment were vacated"). Thus, we must rule on the constitutionality of the provision under which Granite State may be entitled to damages, § 3-1806.B.1. As we have explained, this section was not unconstitutionally applied to Granite State. Accordingly, Granite State is not entitled to damages resulting from the denial of its permits under this section. The district court's denial of damages is affirmed.

C. Attorney's Fees

Granite State argues that it should be entitled to an award of attorney's fees pursuant to 42 U.S.C. § 1988(b), which permits the court to award attorney's fees to the "prevailing party" for actions brought under various civil rights provisions, including 42 U.S.C. § 1983. 42 U.S.C. § 1988(b). Granite State argues that, while it did not succeed on all of its claims in the district court, it nevertheless should be entitled to attorney's fees because it has achieved "excellent results" for third parties who may have sought to post a sign under the provisions of the ordinance

13

stricken by the district court. Appellant's Br. at 40. Under § 1988, however, the plaintiff is considered a "prevailing party" if he obtains "at least some relief on the merits of his claim" . . . "[that] materially alters the legal relationship between the parties." Farrar v. Hobby, 506 U.S. 103, 111-12, 113 S. Ct. 566, 573 (1992) (citations omitted); Hewitt v. Helms, 482 U.S. 755, 760, 107 S. Ct. 2672, 2675 (1987). See also Fangala v. State Bar of Ga., 150 F.3d 1333, 1347 n.34 (11th Cir. 1998). Furthermore, "[a] favorable judicial statement of law in the course of litigation that results in judgment against the plaintiff does not suffice to render him a 'prevailing party'" under § 1988. Hewitt, 482 U.S. at 763, 107 S. Ct. At 2677.

In this case, Granite State is not the "prevailing party" and the relationship between the parties is unaltered.[8] We have determined that § 1306.B.1. was constitutionally applied to Granite State and is facially constitutional. We also determined that the district court erred in allowing Granite State standing to challenge any other provisions in Article 3, Division 18. Moreover, we determined that the district court correctly ruled that Granite State did not have standing to challenge Article 4. Thus, Granite State has not prevailed on any of its claims

---

[8]As in Granite State Outdoor Adver., Inc. v. City of St. Petersburg, it is true that several provisions in the Clearwater ordinance were voluntarily altered by the City as a result of this litigation. These changes, however, "have no bearing on Granite [State], and thus their alteration does not serve to confer prevailing party status upon Granite [State]." ___ F.3d at ___, n.8.

regarding the Clearwater Community Development Code. The district court's denial of an award of attorney's fees is affirmed.

## III. CONCLUSION

The district court erred in its conclusion that Granite State had standing to challenge the entirety of Article 3, Division 18 of the Clearwater Community Development Code. Accordingly, this part of the district court's holding is reversed and remanded for proceedings consistent with this opinion. The district court correctly denied Granite State both standing to challenge Article 4 and injunctive relief because the provision under which Granite State's permit requests were denied is not unconstitutional. Moreover, the district court correctly denied Granite State's request for attorney's fees. Accordingly, the judgment of the district court is AFFIRMED in part, REVERSED in part, and REMANDED for further proceedings consistent with this opinion.

ANDERSON, Circuit Judge, concurring.

I concur in the result.