**ACTION OUTDOOR ADVERTISING II, LLC, Hartrampf Outdoor, LLLP, and Jack Hartrampf, Plaintiffs,**

v.

**LUMPKIN COUNTY, GEORGIA, Defendant.**

**Civil Action No. 2:06–CV–0109–WCO.**

United States District Court,
N.D. Georgia,
Gainesville Division.

Jan. 9, 2008.

G. Franklin Lemond, Jr., Edward Adam Webb, The Webb Law Group, LLC, Atlanta, GA, for Plaintiffs.

Michael Allen O'Quinn, O'Quinn & Cronin, LLC, McDonough, GA, Virginia C.S. Martin, Freeman, Mathis & Gary, LLP, Atlanta, GA, for Defendant.

## ORDER

WILLIAM C. O'KELLEY, Senior District Judge.

The captioned case is before the court for consideration of defendant's motion for summary judgment [24–1].

### I. Factual Background

Action Outdoor Advertising, II, LLC ("Action Outdoor") is a Georgia limited liability company that erects and operates billboards and advertising signs. Hartrampf Outdoor, LLLP ("Hartrampf Outdoor") develops real property and owns several parcels of property in Lumpkin County, Georgia. Jack Hartrampf ("Hartrampf") owns Action and Hartrampf Outdoor. Collectively, plaintiffs are suing defendant Lumpkin County, a political subdivision of the state of Georgia, for its alleged mishandling of several applications for permits to construct signs and billboards.

All of the allegedly mishandled applications were filed under Resolution 84–7 of the Lumpkin County Parkway Development Regulations ("Resolution 84–7").[1] Resolution 84–7 defined a billboard as

> any sign, billboard, or other outdoor advertising structure, including free-standing, roof, wall, or projecting sign, (a) which is in *excess of fifty (50) square feet* in sign face area inclusive of any order

---

1. This ordinance is no longer in effect. On June 15, 2006, Lumpkin County adopted a new sign ordinance.

or trim but exclusive of the base and support, or (b) which is in excess of twenty (20) feet proceeding from the sign to the pavement by a line perpendicular to the roadbed, and (c) is located adjacent to, is visible from, or intended to be read or seen by the traveling public, from any public road.

(Res. 84–7 § 201.3 (emphasis added)). Section 706(9) of Resolution 84–7 specifically prohibited "[a]ll billboards," crossreferencing the definition provided at § 201.3. (Res. 84–7 § 706(9)).[2]

Given this prohibition, in effect, the only signs potentially permitted by Resolution 84–7 were those with a sign face area of less than fifty (50) square feet or those no taller than twenty (20) feet. But not all of the smaller signs, i.e., those that did not qualify as billboards, were permitted. Resolution 84–7 defined a "Parkway Development District." (*See* Res. 84–7 §§ 301, 302). This district, made up of "contiguous and functionally related corridors of land along ... certain [identified] public roadways," was subdivided into two corridors, Corridor A and Corridor B. (Res. 84–7 §§ 301, 302).

For offsite **signs** within Corridor A, Resolution 84–7 authorized the planning commission to issue permits for signs that promoted or directed travelers "to a major historical, scenic[,] or commercial attraction located within Lumpkin County," provided that, among other things, the sign conformed with certain general requirements (like materials) and was owned or sponsored by a public agency, chamber of commerce, or historical society and ap-

proved by the county commissioner. (*See* Res. 84–7 § 703(1)). Like billboards, all other signs, including those not owned or sponsored by a public agency, chamber of commerce, or historical society, were prohibited.

The provisions governing offsite signs in Corridor B were a little more liberal. If an applicant requested a sign permit for property within Corridor B, the planning commission could issue "a permit for one (1) off-site sign for any business located *within two (2) driving miles* of the proposed location of such off-site sign." (Res. 84–7 § 703(2)) (emphasis added). Of course, any sign within Corridor B still had to comply "with all standards" set forth in the regulations, including sign area, height, and set-back requirements.

Resolution 84–7 directed a developer who wished to erect a sign within the Parkway Development District to file a written application for a development permit in the office of the Lumpkin County Planning Commission. (Res. 84–7 § 404). The resolution also called for the county commissioner to appoint an administrative officer of the planning commission, who would be responsible for initially reviewing permit applications, issuing permits, and, if necessary,[3] referring applications to the planning commission, a board of appeals, or the county commissioner. (Res. 84–7 § 404).

The resolution required the planning commission to take action on any matter referred to it within a reasonable time, and it also required that the developer be "promptly informed," in writing, of the

---

**2.** The enforceability of this provision is an issue that this lawsuit presents.

**3.** If the application that the administrative officer reviewed conformed with the requirements set forth in Resolution 84–7, then, generally, he could issue the development permit prior to the next meeting of the planning

commission. If, however, the application did not conform with the requirements (or the administrative officer "ha[d] reason to believe" that it did not comply) or the developer had requested a variance or other exception, then the administrative officer was obligated to refer the application to the planning commission.

action taken by the commission. (Res. 84–7 § 408). A dissatisfied developer could appeal from the decision of the planning commission:

> If the Planning Commission executes an action related to this Resolution which the developer or other aggrieved person believes in [sic] *contrary to law,* that action may be *appealed. Findings of fact,* however, may *not* be appealed.
>
> . . . .
>
> Applications for *appeal* shall be in writing and filed by the developer with the Administrative Officer within 30 days after the decision of the Planning Commission. . . .
>
> The Chairman of the Board of Appeals will set a time and place for a hearing of the appeal/variance request. . . .
>
> . . . .
>
> The Board of Appeals will make a decision concerning the appeal or variance request and record the decision in the minutes of the hearing.
>
> Further appeal may be made to the Commissioner of Lumpkin County by submitting a request for review of the Board of Appeals action at the next regular public meeting of the County Commissioner. The request shall be received and noted in the Commissioner's minutes. Thereafter, the Commissioner shall, at his next regular public meeting, affirm, reverse, or modify the Board of Appeals decision, or decline to act, in

which case the decision shall be considered affirmed and final.

(Res. 84–7 § 410).[4]

The resolution also allowed an applicant to request a variance or an amendment. A variance was appropriate

> where such modification w[ould] not be contrary to the public interest, and where, owing to the conditions *unique* to the individual property on which the variance is sought and not as a result of any action on the part of the property owner, a literal enforcement of this Resolution would result in unnecessary and undue hardship, *provided, however, that no variance shall be granted which shall authorize a land use not otherwise permitted in the Parkway Development District.*

(Res. 84–7 § 201(29)) (emphasis added). If an application sought a variance, the planning commission was charged with reviewing the request and making a written recommendation to the Board of Appeals; the applicant bore the responsibility of presenting his variance request to the Board of Appeals. (Res. 84–7 § 409).[5]

For desired uses that fell outside that allowed by Resolution 84–7, an applicant needed to move to amend the resolution:

> If a developer or landowner finds that a proposed new use of his land does not meet the requirements of this Resolution, he may request that this Resolution be amended to permit his proposed use. The Planning Commission and the Commissioner may also propose an amendment. However, the power to approve

---

4. The decision of the commissioner could also be appealed:

> If the Commissioner executes an action which the developer or other interested person believes to be contrary to law, that action may be appealed to the Georgia Judicial System by filing a petition with the

Clerk of the Lumpkin County Superior Court.

(Res. 84–7 § 412).

5. The same procedure that governed an applicant's appeal governed his variance request. (*See generally* Res. 84–7 § 410).

and enact an amendment rests with the Commissioner.

All applications for amendment must first be reviewed by the Planning Commission. The Planning Commission will send its recommendation in writing to the Commissioner within thirty (30) days, stating reasons for its recommendations. If the Planning Commission fails to send its recommendation to the Commissioner within thirty (30) days, the Commissioner will assume that the Planning Commission approves.

. . . .

After conducting the [required] public hearing and considering recommendations from the Planning Commission, the Commissioner will then make an official decision on the proposed amendment. The decision may or may not concur with the recommendations of the Planning Commission.

(Res. 84–7 § 411). A dissatisfied applicant could appeal the commissioner's decision to the Superior Court of Lumpkin County. (Res. 84–7 § 412).

Action Outdoor began applying for five (5) sign permits as early as December 2003. The first set of applications [6] were for signs with 378 square feet of sign face area, which is apparently a standard size in the industry. The planning director denied the applications on February 4, 2004, because each was for "signs" that actually constituted "billboards," which

were prohibited under the ordinance.[7] Action Outdoor, acting through Hartrampf, submitted an appeal request in writing twelve days later. But, for months, he heard nothing. Finally, on April 2, 2004, Hartrampf e-mailed the planning director and inquired about his attempted appeal. (See Exhibit 13 to French Dep. ("Also, for the off-site signs I requested an appeal in writing; and was curious when it could be scheduled.")). The planning director did not immediately respond to Hartrampf's e-mail, but, eventually, he informed Hartrampf that Action Outdoor's appeals had been forwarded to the county attorney. Again, no action was taken. On June 11, 2004, Hartrampf sent another e-mail to the planning director; this time he was more direct:

Please advise me on the status of the appeal I filed on February 16, 2004 for the sign permits. Previously you had mentioned that it had been forwarded to Casey Horne [the county's attorney] for review and you would be advised of how to proceed. I am still waiting for the time and date of the hearing. Please advise.

(Exhibit 14 to French Dep.). Defendant also ignored this request. Therefore, on August 5, 2004, Hartrampf personally delivered a letter to Francis French, the Clerk of Lumpkin County, seeking a date on which to be heard:

---

**6.** The applications were submitted by "Action Outdoor Advertising, II, LLC, c/o Jack Hartrampf."

**7.** The letter conveying the denial recites that Action's applications were considered under Resolution 84–8, which regulates outdoor commercial advertising along public roads in Lumpkin County. The applications should have been evaluated under Resolution 84–7 because Resolution 84–8 did not apply to the Parkway Development District; all of Action's applications were for signs within the Parkway Development District or close enough to

the district to be governed by that resolution. (See Res. 84–7 § 701 (stating that any sign visible from within the right-of-way of a public roadway listed in § 302 is governed by Resolution 84–7)). The planning director's recitation of Resolution 84–8 instead of 84–7 is immaterial, however, because the provisions relevant to plaintiff's applications were the same. Both resolutions prohibit billboards, which both define as "any commercial sign, billboard, or other outdoor advertising structure" that is in excess of 50 square feet. (Compare Res. 84–8 ¶¶ 2, 3 with Res. 84–7 §§ 201.3, 706(9)).

The purpose of my letter is to once again to [sic] see about the appeal of the denial of the offsite sign applications that I initially appealed in February. I have personally dropped by, called and emailed Mr. Robertson [the planning director] a number of times to remind him to put the matter down for the next available appeal meeting. I was told the matter was forwarded to Mr. Casey Horne [the county's attorney]. To this date I have heard nothing and am realizing that I am just being ignored. Could you please see that this matter is scheduled ASAP?

(Exhibit 15 to French Dep.). The county never heard this appeal.

Action Outdoor submitted an identical application package on June 22, 2005. Like the earlier applications, these were also denied because they sought permits for billboards, which the planning director believed to be prohibited.

On December 2, 2005, Hartrampf Outdoor submitted five new application packages. Unlike Action Outdoor's earlier applications, the permits sought by these applications were for signs of fifty (50) square feet, not billboards. Like the applications for billboards, however, these applications were also denied. On January 13, 2006, Hartrampf requested a variance hearing on the applications. For some reason, four days later, Hartrampf asked for an appeal hearing regarding the original *Action Outdoor* applications, which were resubmitted with the letter (and apparently treated as new applications).[8]

The planning commission denied the December 2, 2005 sign applications and the January 13, 2006 billboard applications on February 13, 2006. Three days later, on February 16, 2006, the county board of commissioners adopted a sixty-day moratorium on sign variances. On March 1, 2006, Hartrampf, acting on behalf of Action Outdoor and Hartrampf Outdoor, appealed the planning commission's decision to the board of commissioners. Presumably as a result of the moratorium, the county took no action on the appeals. The county commissioners eventually extended the moratorium an additional sixty days before adopting a new sign ordinance on June 15, 2006. The county commissioners finally heard the appeals of Action Outdoor and Hartrampf Outdoor, but, on June 29, 2006, they denied them.

This lawsuit grew out of the denied permits and delayed meetings. In it, plaintiffs claim that defendants violated the First Amendment, the Equal Protection Clause, and the Constitution's guarantees of procedural and substantive due process. The case is currently before the court for consideration of defendant's motion for summary judgment.

## II. Discussion

### A. *Legal Standard*

Summary judgment will be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is enti-

---

8. To be clear, the applications Action Outdoor and Hartrampf Outdoor submitted concerned the same properties, i.e., the same proposed sign locations. Action Outdoor initially submitted five applications for permits to erect five billboards. Every subsequent set of applications from Action Outdoor involved the same five locations and the same five pro-

posed billboards. Hartrampf Outdoor's lone application package involved the same five proposed sign locations, but it sought permits for signs with a face area of fifty square feet. One of the five proposed locations was in Corridor A, three were in Corridor B, and one was in neither A nor B but was visible from within Corridor B.

tled to judgment as a matter of law." FED.R.CIV.P. 56(c). Only those claims for which there is no need for a factual determination and for which there is a clear legal basis are properly disposed of through summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). It is well settled that a court considering a motion for summary judgment must view the evidence in a light most favorable to the nonmoving party. *See Samples v. City of Atlanta*, 846 F.2d 1328, 1330 (11th Cir. 1988). It is important to recognize, however, that this principle does not require the parties to concur on every factual point. Rule 56 "[b]y its very terms ... provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Consideration of a summary judgment motion does not lessen the burden on the nonmoving party. The nonmoving party still bears the burden of coming forth with sufficient evidence. *See Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1080 (11th Cir.1990). However, it is important to note the difference "between direct evidence and inferences that may permissibly be drawn from that evidence. Where a nonmovant presents direct evidence that creates a genuine issue of material fact, the only issue is one of credibility; thus, there is no legal issue for the court to decide." *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir.1996). On the other hand, "[a] court need not permit a case to go to a jury ... when the inferences that are drawn from the evidence, and upon which the nonmovant relies, are 'implausible.'" *Id.* at 743. Adopting language from one of its sister circuits, the Eleventh Circuit stated:

If the nonmoving party produces direct evidence of a material fact, the court may not assess the credibility of this evidence nor weigh against it any conflicting evidence presented by the moving party. The nonmoving party's evidence must be taken as true. Inferences from the nonmoving party's "specific facts" as to other material facts, however, may be drawn only if they are reasonable in view of other undisputed background or contextual facts and only if such inferences are otherwise permissible under the governing substantive law. This inquiry ensures that a "genuine" issue of material fact exists for the factfinder to resolve at trial.

*Id.* (citation omitted). "Where the evidence is circumstantial, a court may grant summary judgment when it concludes that no reasonable jury may infer from the assumed facts the conclusion upon which the nonmovant's claim rests." *Id.*

### B. *Analysis*

Before the court can address the merits of the constitutional questions that this lawsuit presents, it must consider jurisdictional ones. The court will first consider the extent to which each plaintiff has standing to challenge the ordinance. Then, the court will turn briefly to defendant's argument that plaintiffs' constitutional challenges are moot.

#### 1. Standing

Standing "is the threshold question in every federal case." *Warth v. Seldin*, 422 U.S. 490, 499, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). "[T]he irreducible constitutional minimum of standing contains three elements." *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). A plaintiff who invokes the jurisdiction of a federal court bears the burden to show

"(1) an injury in fact, meaning an injury that is concrete and particularized, and actual or imminent, (2) a causal connection between the injury and the causal conduct, and (3) a likelihood that the injury will be redressed by a favorable decision." *Granite State Outdoor Adver., Inc. v. City of Clearwater*, 351 F.3d 1112, 1116 (11th Cir. 2003). "An 'injury in fact' requires the plaintiff to 'show that he *personally* has suffered some actual or threatened injury.'" *Id.* at 1117 (quoting *Valley Forge Christian Coll. v. Ams. United for Separation of Church and State*, 454 U.S. 464, 472, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982)).

■ Contrary to the unprecedented position plaintiffs collectively take in their brief, Jack Hartrampf, individually, lacks standing to challenge any aspect of defendant's former ordinance or the manner in which defendant handled any application either of his coplaintiffs submitted. Hartrampf, himself, never applied for a permit under the old ordinance or personally attempted to engage in any conduct that the ordinance prohibited. Accordingly, he has not suffered an actual or threatened injury, and he has no stake in the outcome of this controversy.

Plaintiffs' reliance on *Kennedy v. Avondale Estates*, 414 F.Supp.2d 1184 (N.D.Ga. 2005) is misplaced. There, Judge Carnes was confronted with plaintiffs who desired to engage in conduct that the defendant's *current* ordinance did not allow. *Id.* at 1200 ("Plaintiffs . . . are residents of the City who wish to participate in the political process in a manner that the current ordinance does not allow."). Because the plaintiffs were *living and working* under the allegedly unconstitutional ordinance, they had a personal stake in the outcome of litigation challenging that ordinance. The situation here is wholly different. Hartrampf is not facially challenging an ordinance under which he is living or working; he is attempting to challenge an ordinance that has been repealed.

Of course, had Hartrampf unsuccessfully applied for a permit under the old ordinance, he would have standing to challenge those aspects of the ordinance that personally injured him. *See Clearwater*, 351 F.3d at 1117 (concluding that plaintiff had standing to challenge provision of ordinance under which it had suffered harm). But the absence of that distinct injury, coupled with the fact that Hartrampf is *not* subject to the ordinance that he attempts to challenge in this lawsuit,[9] leads the court to conclude that he, as an individual, lacks standing to maintain this lawsuit against defendant. Accordingly, his claims against defendant must be dismissed.

■ Plaintiffs also overstate the extent to which Action Outdoor and Hartrampf Outdoor have standing. A case or controversy exists "as to each challenged provision [of the ordinance]." *CAMP Legal Defense Fund, Inc. v. City of Atlanta*, 451 F.3d 1257, 1273 (11th Cir.2006). In this case, plaintiffs argue that Action Outdoor has standing to challenge a number of the ordinance's provisions, including those unidentified provisions that provide the ordinance's "basic structure," and summarily conclude that Hartrampf Outdoor "plainly" has standing equivalent to Action's. (Pls.'

---

9. In their brief, plaintiffs argue that "[a]s an individual who owns land in Lumpkin County, Mr. Hartrampf is subject to the County's ordinances that regulate signs and has standing therefore to challenge these ordinances." (Pls.' Resp. Def.'s Mot. Summ. Jdgmt. 5). That may be true, but, unlike the plaintiffs in *Kennedy*, Hartrampf is *not* challenging an ordinance to which he is *now* subject. Plaintiffs' argument that Hartrampf has standing to facially challenge a repealed ordinance that he once lived under simply because he once lived under it is simply unreasonable.

Resp. Def.'s Mot. Summ. Jdgmt. 10, 8). They are wrong.

■ As defendant notes, Action Outdoor and Hartrampf Outdoor suffered distinct injuries under separate provisions of the ordinance, and each has standing to challenge only those provisions of the ordinance that harmed it. *See id.* at 1272–73 (concluding that CAMP could challenge "only provisions of the Festivals Ordinance that affect its activities"); *Clearwater*, 351 F.3d at 1117. Specifically, Action Outdoor unsuccessfully submitted application permits for signs that were considered billboards under the ordinance; it was injured by and has standing to challenge those sections that defined and regulated billboards. Similarly, Hartrampf Outdoor submitted applications for off-site signs but not billboards; thus, it was injured by and has standing to challenge those portions of the ordinance that regulated off-site signs.[10]

### 2. Mootness

■ Having settled the standing issue, the court can now turn to defendant's claim that "some or all of plaintiffs' claims are moot." (Def's. Br. Mot. Summ. Jdgmt. 11). "Article III of the Constitution requires that there be a live case or controversy at the time that a federal court decides the case; it is not enough that there may have been a live case or controversy when the case was [filed]." *Burke v.*

*Barnes*, 479 U.S. 361, 363, 107 S.Ct. 734, 93 L.Ed.2d 732 (1987). "[M]ootness is a justiciability doctrine that must be satisfied before [the court] may decide a case." *Clearwater*, 351 F.3d at 1119. Although a case will normally become moot "when a subsequent [ordinance] brings the existing controversy to an end," *CAMP v. City of Atlanta*, 219 F.3d 1301, 1310 (11th Cir. 2000), when the plaintiff has requested damages, the case is not moot, *Clearwater*, 351 F.3d at 1119.

■ Here, Action Outdoor and Hartrampf Outdoor have prayed for damages and attorneys' fees. Thus, the case is not moot. *Id.* The fact that the challenged ordinance has been repealed will certainly affect the type of relief to which Action Outdoor and Hartrampf Outdoor may be entitled, but it does not moot their claims.[11]

With these justiciability issues behind it, the court can now turn to the merits of the claims of Action Outdoor and Hartrampf Outdoor.

### 3. Action Outdoor's claim that § 706(9) is unconstitutional or unenforceable under the First Amendment

Section 706(9) of defendant's former ordinance flatly prohibited billboards,[12] which, for purposes of this case, were defined as any signs "in excess of fifty (50) square feet." (Res. 84–7 § 201(3)). The

10. Because Action Outdoor and Hartrampf Outdoor each unsuccessfully attempted to pursue appeals of or variances for its respective applications, both entities also have standing to challenge those provisions of the ordinance.

11. In their complaint, plaintiffs have identified requests for injunctive and mandamus relief, which are remedies, as "counts." This drafting oddity may have led defendant to believe it needed to move for summary judgment on these "claims." Despite the label plaintiffs gave these remedial requests, however, they are not claims, and defendant cannot be granted summary judgment on claims that do not exist. Of course, the court is not implying that plaintiffs are or are not entitled to any injunctive or mandamus relief; having not decided whether any plaintiff is entitled to any relief, the court will not use this order as a platform to preview the relief it might award should one of the plaintiffs prevail.

12. In its entirety, Section 706(9) reads, "All billboards are prohibited (See Section 201.3 for definition of "Billboard")."

Constitution does not prevent local governments from prohibiting billboards in the content-neutral manner that defendant has, and Action Outdoor does not argue otherwise. The Supreme Court has stated that a blanket prohibition like defendant's may, in fact, be the only effective way to solve the aesthetic and traffic problems that billboards create. *See Metromedia, Inc. v. San Diego,* 453 U.S. 490, 508, 101 S.Ct. 2882, 69 L.Ed.2d 800 (1981) ("If [a] city has a sufficient basis for believing that billboards are traffic hazards and are unattractive, then obviously the most direct and perhaps the only effective approach to solving the problems they create is to prohibit them.").

The face of defendant's former ordinance reveals that it was adopted to, among other things, prevent traffic congestion and promote aesthetics. (See generally Res. 84–7, ¶ 103). These governmental interests justify the county's prohibiting billboards. *See Messer v. City of Douglasville, Georgia,* 975 F.2d 1505, 1510 (11th Cir.1992) ("It is well settled that both traffic safety and aesthetics are substantial governmental goals."); *Metromedia,* 453 U.S. at 508, 101 S.Ct. 2882 ("[A] city's aesthetics interests are sufficiently substantial to provide an acceptable justification for a content neutral prohibition against the use of billboards.") (citing *Members of City of Council v. Taxpayers for Vincent,* 466 U.S. 789, 806–07, 104 S.Ct. 2118, 80 L.Ed.2d 772 (1984)).

Instead of arguing that the county's even-handed prohibition fails to pass constitutional muster, Action suggests that the county, from the very beginning, has approached the issue incorrectly: The ordinance's billboard prohibition should not have doomed Action Outdoor's requests because the applications should have been evaluated under the appropriate subsection of § 703, which governs offsite signs, not § 706(9), which, of course, prohibited billboards.[13] Action's reading of the ordinance, however, is manufactured and ignores the ordinance's plain language.

When interpreting a statute or ordinance, the court starts with the provision's plain language. *See, e.g., Yates Dev., Inc. v. Old Kings Interchange, Inc. (In re Yates Dev., Inc.),* 256 F.3d 1285, 1288 (11th Cir.2001). Absent a "clearly expressed legislative intent to the contrary," the "normal meanings" of the ordinance's words are generally dispositive. *Horton Homes, Inc. v. United States,* 357 F.3d 1209, 1211–12 (11th Cir.2004) (quoting *Consolidated Bank, N.A. v. United States Dep't of Treasury,* 118 F.3d 1461, 1463 (11th Cir.1997)). Of course, as plaintiffs point out, the court does not look solely at the language of the challenged provision; to determine that provision's plain meaning, the court must consider "the language and design of the [ordinance] as a whole." *Tello v. Dean Witter Reynolds, Inc.,* 410 F.3d 1275, 1278 (11th Cir.2005) (quoting *K–Mart Corp. v. Cartier, Inc.,* 486 U.S. 281, 291, 108 S.Ct. 1811, 100 L.Ed.2d 313 (1988)). Here, the "particular [ordinance] language," as well as the "language and design of the statute as a whole," compel the court to reject Action Outdoor's argument that defendant's former ordinance did not clearly and unambiguously prohibit billboards.

---

**13.** The court disagrees with Action Outdoor's statement that § 703 "does not contain any size of [sic] height restrictions." (Pls.' Resp. Def.'s Br. 14). If nothing else, the implicit restriction is fifty square feet in size or twenty feet in height because a sign that size ceases to be a "sign" under the ordinance; it is a billboard. Plaintiffs use the terms interchangeably, but the ordinance differentiates between "signs" and "billboards." Therefore, when the ordinance says "signs," the court does not read "signs and billboards"; it reads "signs" and recognizes that that term necessarily is something that is not a billboard.

Section 706 of defendant's former ordinance is titled "Prohibited Signs." Subsection nine (9) of that section recites, plainly enough, that "[a]ll billboards are prohibited." (Res. 84–7 § 706(9)). Despite this seemingly straightforward prohibition, Action Outdoor argues that interpreting "[a]ll billboards are prohibited" to mean all billboards are in fact prohibited "fails to reconcile the general prohibition on *billboards* found in Section 706(9) with the more specific allowance of off-site *signs* in Section 703." (Pls.' Resp. Def.'s Mot. Summ. Jdgmt. 14) (emphasis added). There is nothing to reconcile. The two provisions address themselves to different vehicles for off-site advertising. Section 706(9) addresses itself to billboards, prohibiting them, and § 703 involves off-site signs, which, by definition, are not billboards. The sections do not conflict, and the possibility that *other* subsections of § 706 may conflict with § 703 does not change the fact that § 706(9) is consistent with and not at all contrary to § 703.[14]

Accordingly, the court concludes that defendant's billboard ban was unambiguous and constitutional and that defendant correctly applied its *billboard* ban to Action Outdoor's *billboard* applications. Obviously, then, Action's claim that the ban violated the First Amendment fails as a matter of law. That being so, the court notes that Action's claim that the ban violated the Georgia Constitution also fails. *See Lamar Advertising Co. v. City of Douglasville, Georgia*, 254 F.Supp.2d 1321,

1339 (N.D.Ga.2003) (finding that the broader speech protections provided for in the Georgia Constitution do not change the court's analysis of the challenged provision). Defendant is entitled to summary judgment on Action Outdoor's claim that the county's billboard prohibition violated the First Amendment and the Georgia Constitution.

### 4. Hartrampf Outdoor's claims that §§ 703(1) and (2) violate the First Amendment

■ Hartrampf Outdoor's claims, which revolve around its attempt to obtain *sign*—not *billboard*—permits, are another story. In its brief and in open court, defendant admitted that § 703(1) of its former ordinance, which governed off-site signs within Corridor A, is unconstitutional, and the court agrees. That section limited permissible offsite signs to those owned or sponsored by certain favored entities. Such a limitation, as defendant candidly admits, blatantly violates the First Amendment. (*See* Def.'s Br. Mot. Summ. Jdgmt. 15 (acknowledging that Hartrampf Outdoor "should have been given a permit to erect one 50 sq. foot sign in Corridor A and is entitled to any damages it can prove for its denial")). Accordingly, defendant is not entitled to summary judgment on Hartrampf Outdoor's claim that § 703(1) violated the First Amendment.

■ Hartrampf Outdoor's claim that § 703(2) violated the First Amendment also survives defendant's motion for summary judgment.[15] Section 703(2) permit-

---

14. Specifically, plaintiffs argue that § 706(7), which purports to prohibit *all* commercial advertising signs that are not within 100 feet of the activity being advertised and on the same property, contradicts § 703, which specifically permits signs that advertise businesses that are not located on the same property. Any conflict between §§ 706(7) and 703, however, would not allow the court to ignore § 706 in its entirety. Section 706(9) stands alone and is not inconsistent with

§ 703 or any other provision of defendant's former ordinance.

15. At the court's October 2007 hearing, defendant's counsel admitted that Hartrampf Outdoor probably should have received the Corridor B permits for which it applied. By conceding this, defendant necessarily admits (a) § 703(2) was unconstitutional or (b) that the county was applying it arbitrarily and capriciously. Either admission is enough to

ted offsite signs "for any business located within two (2) driving miles of the proposed location of ... [the] sign," (Res. 84–7, § 703(2)), but all other offsite signs were prohibited. At this point, defendant has not established as a matter of law that this restriction of commercial speech comports with the First Amendment. In fact, the court is not convinced that this provision, which was designed to "benefit the locals over people from out of town," escapes strict scrutiny, but, even if it does, the court still cannot say that the ordinance satisfies the more lenient test that defendant contends should apply. *See Central Hudson Gas v. Public Service Commission of New York,* 447 U.S. 557, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980) (articulating four-part test for determining the constitutionality of a restriction on commercial speech).

Section 703(2) survives intermediate scrutiny under *Central Hudson Gas* only if it "seeks to implement a substantial government interest, ... directly advances that interest, and ... reaches no further than necessary to accomplish the given objective." *Southlake Property Associates, Ltd. v. City of Morrow, Georgia,* 112 F.3d 1114, 1116 (11th Cir.1997) (citing *Central Hudson Gas* ). Here, defendant argues that the provision directly advances the county's interests in aesthetics and traffic safety, presumably by reducing the number of off-site advertising signs, and notes that "the Supreme Court has said that complete prohibition of off-site advertising goes 'no further than necessary' in achieving the government's goal." (Def.'s Br. Mot. Summ. Jdgmt. 17 (quoting *Metromedia* )).

As general propositions, these statements are unassailable, but they provide little actual support for defendant's argu-

ment. Defendant did not "completely prohibit" offsite advertising, and the fact that it could have—but did not—does not give it carte blanche to partially prohibit offsite advertising in any manner that it sees fit. The court sees little difference in the potential evils associated with § 703(1), which the county has admitted is unconstitutional, and § 703(2), which the county appears to be defending. In Corridor A, the county attempted to constrict sign sponsors to favored entities like the chamber of commerce; in Corridor B, the county attempted to constrict sign content to a favored message. In both corridors, the county retained too much control.

*Central Hudson* dictates that "[t]he regulatory technique may extend only as far as the interest it serves" and that the government "cannot regulate speech that poses no danger to the asserted state interest." 447 U.S. at 566, 100 S.Ct. 2343. By permitting signs that advertise local business, the county seems to admit that those signs do not pose a danger to aesthetics or traffic safety. If a sign that advertises a business within two (2) miles of the sign is not repugnant to the county's interests in aesthetics and traffic safety, then the court fails to see why signs that advertise businesses more than two (2) miles away are. Either offsite signs are dangerous and noxious, in which case none of them should be permitted, or they are not, in which case those that advertise local businesses and those that advertise nonlocal businesses should be allowed. What the court will not allow the county to say, however, is that a sign that advertises a business within two (2) miles of it is less dangerous and less noxious than an identical sign that advertises a business that is located 2.5 miles away from the sign.

cause the court to question why a defendant would move for summary judgment on a

claim that it admits to be meritorious.

Because § 703(2) is based on this impermissible premise, the court cannot conclude as a matter of law that it is a valid restriction of commercial speech. It does not directly advance the county's legitimate interests in aesthetics and traffic safety. Accordingly, defendant is not entitled to summary judgment on Hartrampf Outdoor's claim.

### 5. Hartrampf Outdoor's claim that § 703(1) violates the Equal Protection Clause

Given defendant's admission that § 703(1) violates the First Amendment, the fact that it does or does not also violate the Equal Protection Clause is, as a practical matter, irrelevant. If it does not, the provision is no less unconstitutional, and, if it does, it is no more unconstitutional. Nevertheless, the parties have briefed the issue, so the court will address it.

As noted above, § 703(1) permits the erection of off-site signs in Corridor A so long as the signs are sponsored by "a public agency, chamber of commerce, or historical society." (Res. 84–7 § 703(1)(b)). Hartrampf Outdoor contends that this qualification violates the Equal Protection Clause. (*See* Compl. ¶ 59 ("The sign regulations are also constitutionally invalid in that they favor signs to be posted by certain favored parties, such as the Chamber of Commerce, without any possible justification.")).

 The Equal Protection Clause requires that the government treat similarly situated individuals in a like manner. U.S. Const., amend. XIV, § 1. The degree to which the court scrutinizes an ordinance that classifies people in a way that causes them to receive different treatment under the law generally depends upon the type of right or the class of people that it affects. If a fundamental right or a suspect class is involved, the court reviews the classification with strict scrutiny. *See, e.g., Gary v. City of Warner Robins,* 311 F.3d 1334, 1337 (11th Cir.2002). If, however, the ordinance "does not infringe upon a fundamental right or target a protected class, equal protection claims relating to it are judged under the rational basis test; specifically, the ordinance must be rationally related to the achievement of a legitimate government purpose." *Joel v. City of Orlando,* 232 F.3d 1353, 1357 (11th Cir.2000).

 Hartrampf Outdoor is not a member of a suspect class, and § 703(1) does not classify persons or entities based upon any suspect categorization. "Therefore, unless the ordinance infringes on a fundamental right, it will be scrutinized under the rational basis test." *Id.* A number of cases in this circuit, many of which have involved plaintiffs' counsel, establish that the right at issue here is not fundamental. *See, e.g., Lamar Advertising Co.,* 254 F.Supp.2d at 1339 (citing applicable precedent from the Eleventh Circuit and noting that "[c]learly, there is no fundamental right to erect billboards or any other category of sign structure"). Even if plaintiffs' counsel is willing to ignore the mountain of authority, the court will not.[16] Section 703(1) is subject to rationality review.

 To survive rationality review, the challenged provision must be "rationally related to the achievement of a legitimate

---

16. In the face of this authority, plaintiffs' argument that the right at issue here is fundamental and that strict scrutiny applies borders on violating Rule 11(b) of the Federal Rules of Civil Procedure and prompted the court to consider taking action pursuant to Rule 11(c) of the Federal Rules of Civil Procedure. The court, however, will not do so at this time. Suffice it to say, the court will not tolerate an attorney's misrepresenting the law, and, if there were any doubt about the degree of candor that the court expects from those who practice before it, this footnote should remove all doubt.

government purpose." *Id.* at 1338 (citing *Joel,* 232 F.3d at 1357). In support of its motion for summary judgment, defendant argues, quite perfunctorily, that it "has demonstrated a substantial interest that was directly advanced by the former ordinance." (Def. Br. Mot. Summ. Jdgmt. 19). Again, as was the case with the analysis of § 703(2) under the First Amendment, the court has difficulty accepting defendant's bald assertion. Although the county could have chosen to ban offsite signs completely, it cannot irrationally decide what signs it will allow. Here, the county allowed signs that were sponsored by groups it hand-picked and excluded all others. Aesthetics and traffic concerns do not justify that disparate treatment. Signs sponsored by public agencies, chambers of commerce, and historical societies can be just as noxious to aesthetics and dangerous to drivers as those sponsored by Hartrampf Outdoor or any other person or entity.

Because the court cannot identify a rational basis for defendant's failing to treat similarly situated persons in a like manner, defendant is not entitled to summary judgment on Hartrampf Outdoor's claim that § 703(1) violated the Equal Protection Clause.

### 6. The Due Process claims of Action Outdoor and Hartrampf Outdoor

Finally, defendant contends that it is entitled to summary judgment on plaintiffs' claims that defendant's handling of the sign and billboard permit applications violate the Constitution's guarantees of substantive and procedural due process.

#### a. Substantive Due Process

■ "The substantive component of the Due Process Clause protects those rights that are 'fundamental,' that is,

rights that are 'implicit in the concept of ordered liberty.'" *McKinney v. Pate,* 20 F.3d 1550, 1556 (11th Cir.1994) (en banc). "Fundamental rights are those rights created by the Constitution." *Greenbriar Village, LLC v. Mountain Brook City,* 345 F.3d 1258, 1262 (citing *DeKalb Stone, Inc. v. County of DeKalb, Ga.,* 106 F.3d 956, 959 n. 6 (11th Cir.1997)) (per curiam). "Property interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules ... that stem from an independent source such as state law." *Id.* (quoting *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)).

■ Here, plaintiffs predicate their substantive due process claim on the county's refusal to issue sign permits, which is a property interest not created by the Constitution. (*See* Compl. ¶ 48 ("[A]lthough the requested signs fully comply with the letter and spirit of the County's regulations, officials have not allowed signs....")). This argument fails. One does not have a fundamental right to erect signs or billboards. Therefore, no substantive due process claim is available on these facts, and defendant is entitled to summary judgment on this claim. *Greenbriar,* 345 F.3d at 1262 ("[T]o the extent that Greenbriar predicates its substantive due process claim directly on the denial of its state-granted and-defined property right in the permit, no substantive due process claim is viable.").[17]

The court's substantive due process inquiry ends here. Whatever the circumstances, a substantive due process cause of action simply does not exist where an exec-

---

**17.** Here, the court must repeat a familiar refrain: plaintiffs' writing that they are asserting a fundamental right does not make it so. The right at issue in this lawsuit is not a fundamental one. "As prior sign ordinance

case law demonstrates, there is no fundamental right to display any and all signs without restriction." *Kennedy,* 414 F.Supp.2d at 1219.

utive actor deprives a plaintiff of a state-created property right. *See, e.g., DeKalb Stone,* 106 F.3d at 959–60. The parties' discussion of plaintiffs' ability or inability to satisfy the "shocks the conscience" standard set forth in *Rochin v. California,* 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952), is misplaced. *Rochin* is inapplicable.[18] Under *McKinney,* "non-legislative deprivations of state-created rights, which would include land-use rights, cannot support a substantive due process claim, not even if the plaintiff alleges that the government acted arbitrary and irrationally," *Greenbriar,* 345 F.3d at 1263, which, essentially, is all a *Rochin*-based claim involves. *See Waddell v. Hendry County Sheriff's Office,* 329 F.3d 1300, 1305 (11th Cir.2003) ("[C]onduct by a government actor will rise to the level of a substantive due process violation only if the act can be characterized as *arbitrary* or conscience shocking in a constitutional sense.") (emphasis added). Due process is satisfied for these deprivations so long as proper procedures are employed. *McKinney,* 20 F.3d at 1559.[19]

### b. Procedural Due Process

■ Plaintiffs also argue that defendant violated their right to procedural due process when it "much delayed" the proceedings related to their sign and billboard applications. (*See* Compl. ¶ 47). The Fourteenth Amendment protects against the government's depriving one of liberty or property without procedural due process. *See generally Bd. of Regents of State Colls. v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). The deprivation, however, is not complete "unless and until the [s]tate refuses to provide due process." *Zinermon v. Burch,* 494 U.S.

113, 126, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990); *see also McKinney,* 20 F.3d at 1557 ("[O]nly when the state refuses to provide a process sufficient to remedy the procedural deprivation does a constitutional violation actionable under § 1983 arise."). "In other words, if state courts, upon request, would provide an adequate remedy for the procedural deprivation [plaintiffs] claim[ ] to have suffered, then there is no federal procedural due process violation, even if the plaintiff failed to take advantage of the state remedy." *Cook v. City of Jackson, Georgia,* No. 5:05–CV–250, 2007 WL 737514, *5 (M.D.Ga. March 7, 2007) (citing *Horton v. Bd. of County Comm'rs,* 202 F.3d 1297, 1300 (11th Cir. 2000)).

■ Here, there has been no federal procedural due process violation because there is an adequate state remedy that plaintiffs have failed to pursue. Under Georgia law, a party may seek a writ of mandamus when "no other specific legal remedy is available[,] and a party has a clear legal right to have a certain act performed." *Cochran v. Collins,* 253 F.Supp.2d 1295, 1305 (N.D.Ga.2003). Plaintiffs could have used the writ to compel defendant to hold the hearings and consider the appeals about which they complain. *See Cochran,* 253 F.Supp.2d at 1305 (noting that writ could be used to "require a governmental board to hold a hearing as provided by law"). Alternatively, as the ordinance itself contemplates, plaintiffs could have filed a petition in the Superior Court of Lumpkin County pursuant to O.C.G.A. § 5–4–1, which authorizes superior courts to review by writ of certiorari the decision of any person exercising

---

**18.** If *Rochin* were applicable, the court would not find that defendant's conduct shocked the conscience. Thus, defendant would still be entitled to summary judgment on plaintiffs' substantive due process claim.

**19.** Obviously, if appropriate procedures are not employed, the proper claim is one for violation of procedural due process, not substantive due process.

judicial powers. Plaintiffs' failure to take advantage of these available state-court remedies bars their federal procedural due process claim. *Cotton v. Jackson,* 216 F.3d 1328, 1331 (11th Cir.2000) ("If adequate state remedies were available but the plaintiff failed to take advantage of them, the plaintiff cannot rely on that failure to claim that the state deprived him of procedural due process.").

## III. Conclusion

For all of these reasons, defendant's motion for summary judgment [24–1] is hereby **GRANTED in part and DENIED in part.** Specifically, the motion is granted as to:

(a) Jack Hartrampf's claims against defendant;

(b) Action Outdoor's claim that the county inappropriately applied its billboard prohibition to Action's requests for 378 square foot signs or that the prohibition was unconstitutional under the First Amendment or the Georgia Constitution;

(c) Action Outdoor's claims that the county's handling of its billboard applications violated the Constitution's guarantees of substantive due process and procedural due process; and

(d) Hartrampf Outdoor's claim that the county's handling of its sign applications violated the Constitution's guarantees of substantive due process and procedural due process.

To the extent that defendant sought summary judgment on Hartrampf Outdoor's claims that §§ 703(1) and (2) of defendant's former ordinance violated the First Amendment and the Georgia Constitution and that § 703(1) violated the Equal Protection Clause, the motion for summary judgment must be denied.