# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
August 15, 2022

Lyle W. Cayce
Clerk

No. 21-50958

MARIELA PEREZ, *on behalf of herself and all others similarly situated*,

*Plaintiff—Appellee*,

*versus*

MCCREARY, VESELKA, BRAGG & ALLEN, P.C.; MVBA, L.L.C., *formerly known as* MCCREARY, VESELKA, BRAGG & ALLEN, L.L.C.,

*Defendants—Appellants*.

Appeal from the United States District Court
for the Western District of Texas
No. 1:19-CV-724

Before DAVIS, SMITH, and ENGELHARDT, *Circuit Judges*.

JERRY E. SMITH, *Circuit Judge*:

McCreary, Veselka, Bragg & Allen ("MVBA") is a law firm that specializes in collecting debts owed to Texas local governments. In 2019, it sent a letter to Mariela Perez demanding that she pay several hundred dollars in delinquent utility debt that she owed to the City of College Station. But limitations on that debt had run, and the letter did not disclose that fact. So Perez sued MVBA under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692e. She also sought to certify a class of Texans with time-barred debt who had received the same form letter. The district court granted

that request, and MVBA appealed under Federal Rule of Civil Procedure 23(f).

On appeal, MVBA does not contest Perez's standing. But we have an "independent obligation to assure that standing exists, regardless of whether it is challenged by any of the parties." *Summers v. Earth Island Inst.*, 555 U.S. 488, 499 (2009). Perez has standing only if the letter inflicted an injury with a "close relationship to a harm traditionally recognized as providing a basis for a lawsuit in American courts." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2200 (2021) (quotation omitted). Because Perez hasn't shown that she has suffered such an injury, we vacate the class-certification order and remand with instruction to dismiss for want of jurisdiction.

## I.

When Perez was living in College Station, she incurred $486.57 in utility bills that she did not pay. Later, the city hired MVBA to collect the debt. The firm tried to do so by sending Perez a form letter demanding payment. Notably, her debt had become delinquent four years and one day before MVBA sent its letter. Under Texas law, that meant it was unenforceable. *See* Tex. Civ. Prac. & Rem. Code § 16.004(a). But the letter failed to mention that fact.

MVBA soon paid a price for its omission. Perez had previously filed FDCPA suits against three other defendants. And when she received the form letter, she sued MVBA, too.

Perez alleged that the firm had violated the FDCPA by making a misrepresentation in connection with an attempt to collect her debts. *See* 15 U.S.C. § 1692e. She also sought to represent a class of Texas consumers who had received the same form letter from MVBA in connection with their time-barred debts. And she requested that she be awarded statutory damages, a declaration that MVBA's debt-collection practices violate the

FDCPA, costs, and attorneys' fees.

Importantly for present purposes, Perez's complaint highlighted three injuries that she suffered as a result of MVBA's letter. First, she maintained that the letter "created a significant risk of harm" in that she might have paid her time-barred debts. Second, she claimed that the letter misled and confused her about the enforceability of her debt. Finally, she said that the letter required her to consult an attorney to determine the enforceability of the debt.

After discovery, Perez moved to certify her class. Both parties also moved for summary judgment. As relevant here, MVBA contended that Perez did not have standing to bring suit because she had not suffered a concrete injury-in-fact under *Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016). While those motions were pending, the Supreme Court decided *TransUnion*. MVBA brought that decision to the attention of the district court in a motion for leave to file supplemental authority that reiterated its position that Perez had not suffered an injury in fact.

One day later, the district court ruled on the three motions. First, it rejected MVBA's claim that Perez lacked standing to bring suit. It held that the violation of Perez's statutory rights under the FDCPA constituted a concrete injury-in-fact because those rights were substantive, not procedural. In the alternative, it maintained that Perez's confusion qualified as a concrete injury-in-fact. And, in a footnote, it distinguished *TransUnion* based on its facts. Second, it held that MVBA's letter had violated the FDCPA but factual disputes concerning an affirmative defense precluded summary judgment. Finally, it certified the proposed class under Rule 23(b)(3).

MVBA sought permission to appeal the class-certification order under Rule 23(f). It received that permission from a motions panel of our court and now appeals.

No. 21-50958

## II.

Federal courts are courts of limited subject matter jurisdiction. Our power to resolve disputes is limited to "Cases" and "Controversies," U.S. Const. art. III, § 2, to prevent us from encroaching on domains properly allocated to the other branches in our system of self-government, *see TransUnion*, 141 S. Ct. at 2203; *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013); *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). As relevant for our purposes, a lawsuit is not a "Case[ ]" or "Controvers[y]" unless the plaintiff can prove that he has standing to bring suit. *Lujan*, 504 U.S. at 560–61.

That requires the plaintiff to "show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion*, 141 S. Ct. at 2203. Moreover, "standing is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek (for example, injunctive relief and damages)." *Id*. at 2208.

This case involves the first element of standing: the requirement that the plaintiff show he has suffered a concrete injury-in-fact. Last Term, the Supreme Court clarified standing's concrete-injury requirement in *TransUnion*. There, it reiterated that a purported injury is not concrete for purposes of Article III unless it has a "'close relationship' to a harm traditionally recognized as providing a basis for a lawsuit in American courts." *TransUnion*, 141 S. Ct. at 2200 (quoting *Spokeo*, 578 U.S. at 340–41). That standard doesn't require an "exact duplicate." *Id*. at 2204. But "federal courts" may not "loosen Article III based on contemporary, evolving beliefs about what kinds of suits should be heard in federal courts." *Ibid*.

Some harms plainly have that "close relationship." Think of "tradi-

4

tional tangible harms, such as physical harms and monetary harms." *Ibid*. But intangible harms can also be concrete. Think of the kind of harms recognized in longstanding tort law or the Constitution itself. *See ibid*. When evaluating whether intangible harms are concrete, Congress's views are also entitled to "due respect." *Ibid*. "Congress may 'elevate to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law.'" *Spokeo*, 578 U.S. at 341 (alteration adopted and quotation omitted).

But "Congress's creation of a statutory prohibition or obligation and a cause of action does not relieve courts of their responsibility to independently decide whether a plaintiff has suffered a concrete harm under Article III." *TransUnion*, 141 S. Ct. at 2205. Any other rule would allow Congress to grant private plaintiffs a personal stake in enforcing regulatory law and ultimately usurp the President's Article II authority to execute the laws. *See id*. at 2206–07 & nn.2–3. And that would aggrandize *our* power by letting us resolve disputes that are not "of a Judiciary Nature." 2 The Records of the Federal Convention of 1787, at 430 (M. Farrand ed. 1911) (Statement of James Madison).

So *TransUnion* is clear: A plaintiff always needs a concrete injury to bring suit, and injuries are concrete only if they bear a "close relationship" to injuries that courts have traditionally recognized as concrete. But how close is close enough? The Supreme Court hasn't provided an exact formulation. But then-Judge Barrett got it right in *Gadelhak v. AT&T Services Inc.*, 950 F.3d 458, 462 (7th Cir. 2020): "[W]e are meant to look for a 'close relationship' in kind, not degree." After all, Congress's ability to "elevate" harms "to the status of legally cognizable injuries," *TransUnion*, 141 S. Ct. at 2205 (quotation omitted), implies that the level of harm required at common law "does not stake out the limits of [its] power to identify harms deserving a remedy," *Gadelhak*, 950 F.3d at 463.

No. 21-50958

Picking up on that cue, our court has already recognized that we must "focus[ ] on types of harms protected at common law, not the precise point at which those harms become actionable." *Cranor v. 5 Star Nutrition, L.L.C.*, 998 F.3d 686, 693 (5th Cir. 2021) (quotation omitted). Beyond the Seventh Circuit, many of our sister circuits have done the same.[1] So a plaintiff doesn't need to demonstrate that the level of harm he has suffered would be actionable under a similar, common-law cause of action. But he does need to show that the type of harm he's suffered is similar in kind to a type of harm that the common law has recognized as actionable. If he can't do that, he hasn't suffered a concrete injury and doesn't have standing to bring suit.

## III.

That brings us to this case. Before the district court, MVBA claimed that Perez hadn't suffered a concrete injury. It failed to do so on appeal. But we have an obligation to assure ourselves of jurisdiction—even in "limited" Rule 23(f) interlocutory appeals that typically embrace "only the issue of class certification." *Bertulli v. Indep. Ass'n of Cont'l Pilots*, 242 F.3d 290, 294 (5th Cir. 2001); *see also Flecha v. Medicredit, Inc.*, 946 F.3d 762, 769 (5th Cir. 2020). And in a class action, "federal courts lack jurisdiction if no named plaintiff has standing." *Frank v. Gaos*, 139 S. Ct. 1041, 1046 (2019) (per curiam). Accordingly, we directed the parties to be prepared to discuss at oral argument whether Perez had suffered a concrete injury-in-fact under *TransUnion*.

---

[1] *See Krakauer v. Dish Network, LLC*, 925 F.3d 643, 653–54 (4th Cir. 2019); *Golan v. FreeEats.com, Inc.*, 930 F.3d 950, 959 (8th Cir. 2019); *Lupia v. Medicredit, Inc.*, 8 F.4th 1184, 1191 (10th Cir. 2021); *Hunstein v. Preferred Collection & Mgmt. Servs., Inc.*, 17 F.4th 1016, 1024–27 (11th Cir.), *reh'g en banc granted, opinion vacated*, 17 F.4th 1103 (11th Cir. 2021). Two others have also focused on the "character" of the relevant harms. *Melito v. Experian Mktg. Sols., Inc.*, 923 F.3d 85, 92–93 (2d Cir. 2019); *Susinno v. Work Out World Inc.*, 862 F.3d 346, 352 (3d Cir. 2017).

There, Perez's counsel advanced five theories for holding that Perez had suffered a concrete injury-in-fact. As he had before the district court, he claimed that the violation of Perez's rights under the FDCPA itself qualified as an injury-in-fact. He again pressed three theories of injury that were mentioned in Perez's complaint: that the letter subjected Perez to a material risk of financial harm, that it confused or misled her, and that it required her to waste her time by consulting with an attorney. And he advanced a new theory that the receipt of the unwanted letter was analogous to the tort of intrusion upon seclusion. Perez has failed to meet her burden for all of those theories.

## A.

We begin with Perez's request for damages. *First*, Perez claims that the violation of her statutory rights under the FDCPA itself qualifies as a concrete injury. The district court advanced a similar contention, reasoning that Perez's suit related to her substantive right to be free from misleading information instead of a "bare procedural violation" of the FDCPA that would not be cognizable under *Spokeo*, 578 U.S. at 341.

*TransUnion* forecloses those theories. It explicitly held that "Article III standing requires a concrete injury even in the context of a statutory violation." 141 S. Ct. at 2205 (quoting *Spokeo*, 578 U.S. at 341); *see also id.* ("[U]nder Article III, an injury in law is not an injury in fact."). It "reject[s] the proposition that 'a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right.'"[2] And it emphasizes that a hypothetical lawsuit based only on the violation of an environmental

---

[2] *Id.* (quotation omitted); *see also id.* ("For standing purposes . . . , an important difference exists between (i) a plaintiff's statutory cause of action to sue a defendant over the defendant's violation of federal law, and (ii) a plaintiff's suffering concrete harm because of the defendant's violation of federal law.").

statute "may not proceed because that plaintiff has not suffered any physical, monetary, or cognizable intangible harm traditionally recognized as providing a basis for a lawsuit in American courts." *Id.* at 2206.

Nor is *Spokeo* to the contrary. Granted, that opinion held that a "bare procedural violation" of a statute does not qualify as an injury-in-fact. 578 U.S. at 341. But *Spokeo* merely cited that as an "example" of a statutory violation that alone would not create an injury-in-fact. *Id.* Again, regardless of whether a statutory right is procedural or substantive, *Spokeo* emphasized that "Article III standing requires a concrete injury even in the context of a statutory violation." *Id.* Its reference to procedural violations merely underscored that conclusion: The "[d]eprivation of a procedural right without some concrete interest that is affected by the deprivation . . . is insufficient to create Article III standing." *Id.* (quoting *Summers*, 555 U.S. at 496). For Article III purposes, *Spokeo* never distinguished between substantive and procedural statutory rights. Accordingly, Perez's first theory doesn't establish that she has standing to bring suit.

*Second*, Perez maintains that MVBA's letter subjected her to a material risk of financial harm and that that exposure qualifies as a concrete injury. Specifically, Perez claims that her receipt of the letter subjected her to a risk that she might accidentally pay her time-barred debts.

This theory, too, is foreclosed by *TransUnion*. Remember: A plaintiff always must be able to point to a concrete injury to bring suit. And if a risk hasn't materialized, the plaintiff hasn't yet been injured. *TransUnion* held that merely being subjected to a risk of future harm cannot support a suit for damages. 141 S. Ct. at 2210–11. A plaintiff can sue for damages if the risk materializes or causes a separate injury-in-fact, such as emotional distress. *Id.* But those are suits based on those injuries, not the risk itself. *Id.*

Once again, *Spokeo* doesn't save this theory. That case acknowledged

that a "material risk of harm" can "satisfy the requirement of concreteness." 578 U.S. at 341–42. But *TransUnion* clarified that this language applied to "forward-looking" suits for declaratory or injunctive relief that seek to "prevent the harm from occurring." 141 S. Ct. at 2210–11. A suit for damages demands compensation for injuries that a plaintiff has suffered in the past, so that principle doesn't apply.

True, we have previously held that a plaintiff's "expos[ure] . . . to a real risk of financial harm" caused by an FDCPA violation can qualify as a concrete injury-in-fact in a suit for damages. *See Sayles v. Advanced Recovery Sys., Inc.*, 865 F.3d 246, 250 (5th Cir. 2017), *aff'g* 206 F. Supp. 3d 1210 (S.D. Miss. 2016) (awarding damages to the plaintiff). But that case predated *TransUnion* by nearly four years, and we aren't bound by panel opinions that the Supreme Court has "implicitly overruled." *In re Bonvillian Marine Serv., Inc.*, 19 F.4th 787, 792 (5th Cir. 2021) (quotation omitted). One way that can happen is "if a subsequent Supreme Court opinion establishes a rule of law inconsistent with [our] precedent." *Id.* (quotation omitted). *Sayles* can't be squared with *TransUnion*, so *TransUnion* controls. And that means the unmaterialized risk Perez experienced can't support her suit for damages.

*Third*, Perez says the confusion she experienced from MVBA's letter qualifies as a concrete injury. The district court endorsed that theory, but we disagree.

Perez's argument isn't entirely clear, but we understand her to analogize the confusion she suffered to fraudulent-misrepresentation torts. Such torts make *A* liable for *B*'s pecuniary losses where *A* intentionally misleads *B* and *B* justifiably relies on that misrepresentation. RESTATEMENT (FIRST)

OF TORTS §§ 525, 549, 553 (AM. L. INST. 1938).[3] Perez's confusion bears some similarities to those torts. After all, her confusion is the result of MVBA's allegedly misleading letter, and those torts make tortfeasors liable for similar misrepresentations.

But Perez's problem is that her confusion isn't similar "in kind" to the harm recognized by fraudulent misrepresentation, *Gadelhak*, 950 F.3d at 462, and that's what matters for standing purposes. The nature of the harm recognized by fraudulent misrepresentation is a traditional, *tangible* harm: the "pecuniary loss" the plaintiff sustains.[4] And that means Perez's confusion—which can only be an intangible harm, if it's a harm at all—is necessarily *different* "in kind" from her common-law analog. *Gadelhak*, 950 F.3d at 462. We thus join several of our sister circuits in holding that the

---

[3] As an originalist matter, it would make the most sense to limit the category of concrete harms to those recognized at the time Article III was ratified. But *TransUnion* relied in part on the twentieth-century *Restatement (First) of Torts* to establish the nature of several types of concrete harms. 141 S. Ct. at 2208–09. Likewise, the Courts of Appeals—including this one—have relied on both the *Restatement (First)* and the *Restatement (Second)* to do the same. *See, e.g.*, *Amrhein v. eClinical Works, LLC*, 954 F.3d 328, 334 (1st Cir. 2020); *Melito*, 923 F.3d at 93; *Susinno*, 862 F.3d at 351; *Krakauer*, 925 F.3d at 653; *Cranor*, 998 F.3d at 691; *Buchholz v. Meyer Njus Tanick, PA*, 946 F.3d 855, 864 (6th Cir. 2020); *Gadelhak*, 950 F.3d at 462; *Braitberg v. Charter Commc'ns, Inc.*, 836 F.3d 925, 930 (8th Cir. 2016); *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017); *Lupia*, 8 F.4th at 1191; *Salcedo v. Hanna*, 936 F.3d 1162, 1171 (11th Cir. 2019); *Owner-Operator Indep. Drivers Ass'n, Inc. v. U.S. Dep't of Transp.*, 879 F.3d 339, 345 (D.C. Cir. 2018). So we, too, will rely on the *Restatements*.

[4] RESTATEMENT (FIRST) § 549; *see also id.* § 553 (noting that liability attaches for "the loss caused by the *making* of the gift" (emphasis added)); RESTATEMENT (SECOND) OF TORTS §§ 525, 529 (AM. L. INST. 1977); *cf. Trichell v. Midland Credit Mgmt., Inc.*, 964 F.3d 990, 997–98 (11th Cir. 2020) (holding that the plaintiffs had not suffered a harm similar in kind to fraudulent misrepresentation because they had not suffered actual damages).

No. 21-50958

state of confusion, absent more, is not a concrete injury under Article III.[5]

*Fourth*, Perez says the time she wasted by consulting with her lawyer after receiving the letter qualifies as a concrete injury. Absent an allegation that Perez paid her attorney anything for the consultation, we must assume that her purported injury is solely lost time.

Perez doesn't offer a common-law analog to the time-based injury she claims to have suffered. In other words, she has not met her "burden [to] demonstrate[e] that [she has] standing" based on that theory. *TransUnion*, 141 S. Ct. at 2207. After all, how can we decide whether two harms have a "close relationship" if we don't know what one of them is? *Id.* at 2200 (quotation omitted). It is not our job to "conjure up possible theories" that could carry a litigant's burden. *Raley v. Hyundai Motor Co.*, 642 F.3d 1271, 1275 (10th Cir. 2011).

Besides, we are not aware of any tort that makes a person liable for wasting another's time. Although tort plaintiffs can sometimes recover damages for the opportunity costs attributable to the tort, the nature of the underlying harm is different—*e.g.*, physical damage in the case of a personal injury suit. Like at least one of our sister circuits, we are thus skeptical that a time-based injury alone could qualify as a concrete injury. *Cf. Brunett*, 982 F.3d at 1069. Still, we do not conclusively decide whether such injuries are closely related to traditional harms, permitting future parties to develop the question further. We hold only that Perez did not carry her burden to show that a time-based injury could sustain her claims.

---

[5] *Garland v. Orlans, PC*, 999 F.3d 432, 438 (6th Cir. 2021); *Brunett v. Convergent Outsourcing, Inc.*, 982 F.3d 1067, 1068 (7th Cir. 2020); *see also Trichell*, 964 F.3d at 997–98. The Eighth Circuit also appeared to endorse this holding in *Ojogwu v. Rodenburg Law Firm*, 26 F.4th 457, 463 (8th Cir. 2022).

No. 21-50958

*Finally*, Perez claims that her receipt of an unwanted letter caused her to suffer a concrete injury analogous to the tort of intrusion upon seclusion. Once again, we disagree.

A person commits the tort of intrusion upon seclusion by "intentionally intrud[ing], physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns . . . if the intrusion would be highly offensive to a reasonable person." RESTATEMENT (SECOND) § 652B. One pattern of liability is for repeated, harassing communications. *See id.* cmt. d; *Gadelhak*, 950 F.3d at 462.

*TransUnion* explicitly recognized that harms analogous to this tort can qualify as concrete. *See* 141 S. Ct. at 2204 (citing *Gadelhak*, 950 F.3d at 462). Before and after *TransUnion*, many of our sister circuits also held that unwanted communications could cause concrete injuries similar to intrusion upon seclusion or other privacy torts.[6] Since the harms elevated by Congress need only be similar "in kind, not degree," *Gadelhak*, 950 F.3d at 462, it seems to follow that a single unwanted communication could qualify as a concrete injury even though intrusion upon seclusion requires many. So how can we say that Perez's receipt of the letter did not inflict a concrete injury?

The answer is that Congress *didn't* elevate the receipt of a single, unwanted message to the status of a legally cognizable injury in the FDCPA. Perez sued MVBA for violating the statute's antifraud provision. 15 U.S.C. § 1692e. Congress's concern in prohibiting "false, deceptive, or misleading representation[s] or means in connection with the collection of any debt"

---

[6] *Melito*, 923 F.3d at 92–93; *Susinno*, 862 F.3d at 351; *Krakauer*, 925 F.3d at 653; *Gadelhak*, 950 F.3d at 462; *Van Patten*, 847 F.3d at 1042–43; *Lupia*, 8 F.4th at 1191; *Hunstein*, 17 F.4th at 1023–24; *but see Salcedo*, 936 F.3d at 1172. Two circuits—including this one—have also recognized that unwanted communications can inflict a concrete injury analogous to a nuisance or a public nuisance. *Cranor*, 998 F.3d at 692; *Golan*, 930 F.3d at 959.

wasn't consumer privacy. It was the economic harms that consumers suffered due to aggressive and unfair attempts to collect their debts. *See id.* § 1692(a) (finding that "[a]busive debt collection practices contribute to the number of personal bankruptcies, to marital instability, [and] to the loss of jobs").

Congress also expressed concern about "invasions of individual privacy." *Id.* § 1692(a). But it addressed those problems through a *different* section of the FDCPA: the statute's prohibition on harassment and abuse. *Id.* § 1692d. Perez hasn't sued MVBA based on that provision, so she can't bootstrap the harms it recognizes as actionable to demonstrate standing to sue based on a different provision.[7]

Anyway, the FDCPA's harassment provision doesn't recognize that a single unwanted message qualifies as a concrete harm. Instead, its closest analog to an unwanted letter—unwanted telephone calls—must be made "repeatedly or continuously." 15 U.S.C. § 1692d(5). Its general prohibition on actions that "harass, oppress, or abuse" a debtor carries the same connotation. *Id.* § 1692d. Accordingly, even if Congress could elevate a single unwanted message to the status of a concrete injury, it hasn't done so here. Perez does not have standing to bring her suit for damages.

## B.

That brings us to Perez's request for a declaratory judgment. Perez asks us to declare that MVBA's debt-collection practices violate the FDCPA. But Perez must "demonstrate standing" for this "form of relief," too.

---

[7] Other circuits have also rejected the use of privacy-related torts to bootstrap standing when a plaintiff sues a defendant for violating statutory provision that do not involve privacy. *Ward v. Nat'l Patient Acct. Servs. Sols., Inc.*, 9 F.4th 357, 362 (6th Cir. 2021); *cf. Gunn v. Thrasher, Buschmann & Voelkel, P.C.*, 982 F.3d 1069, 1071 (7th Cir. 2020).

*TransUnion*, 141 S. Ct. at 2208.  Once again, none of her claimed injuries is concrete.  Our reasoning is the same except for one of Perez's purported injuries: the risk of financial harm she suffered from MVBA's letter.

As we have previously explained, a risk of injury does not qualify as concrete harm for purposes of a damages claim.  But the story is different where a plaintiff requests a "forward-looking" remedy such as an injunction or declaration.  *TransUnion*, 141 S. Ct. at 2210; *see also City of Austin v. Paxton*, 943 F.3d 993, 1002 (5th Cir. 2019).  That's because standing doesn't always require a plaintiff's concrete injury to be "actual"—*i.e.*, an injury that the plaintiff has already sustained.  *Lujan*, 504 U.S. at 560 (quotation omitted).  A plaintiff can sometimes show standing by pointing to a concrete injury that is "imminent."  *Id*. (quotation omitted).  Accordingly, "a material risk of future harm" permits the plaintiff to sue "to prevent the harm from occurring, at least so long as the risk of harm is sufficiently imminent and substantial."  *TransUnion*, 141 S. Ct. at 2210.

The problem for Perez is that she doesn't allege that she is *currently* subject to a material risk of financial harm.  Instead, she says that she suffered that risk *in the past*.  According to her complaint, Perez was confused by MVBA's letter and might have accidentally paid a time-barred debt.  But that confusion dissipated once she consulted her attorney.  She hasn't alleged facts that show she might receive another misleading letter from MVBA in the future.  So she can't point to an "imminent" concrete harm to support her request for forward-looking relief.

Nor can the risk she suffered in the past give her standing to bring suit.  We have already explained why that risk does not qualify as a concrete injury under *TransUnion*.  But even if that weren't true, forward-looking relief like injunctions and declarations couldn't fix it.  And that means Perez's couldn't meet standing's redressability requirement when seeking that relief.  *Stringer*

No. 21-50958

*v. Whitley*, 942 F.3d 715, 720 (5th Cir. 2019).  Thus, Perez doesn't have standing to bring a suit for a declaration.

\* \* \* \* \*

The class-certification order is VACATED, and the case is REMANDED with instruction to dismiss for want of jurisdiction.