[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-10199

_____

SUSAN DRAZEN,
on behalf of herself and other persons similarly situated,

Plaintiff-Appellee,

Godaddy.com, LLC,
a Delaware Limited Liability Company,

Defendant-Appellee,

*versus*

MR. JUAN ENRIQUE PINTO,

Movant-Appellant.

_____

2                    Opinion of the Court                    21-10199

Appeal from the United States District Court
for the Southern District of Alabama
D.C. Docket No. 1:19-cv-00563-KD-B

_____

Before WILLIAM PRYOR, Chief Judge, WILSON, JORDAN, ROSENBAUM, JILL PRYOR, NEWSOM, BRANCH, GRANT, LUCK, BRASHER, ABUDU and TJOFLAT, Circuit Judges.*

ROSENBAUM, Circuit Judge, delivered the opinion for the unanimous Court.

JORDAN, Circuit Judge, and NEWSOM, Circuit Judge, filed a concurring opinion.

BRANCH, Circuit Judge, filed a concurring opinion.

ROSENBAUM, Circuit Judge:

A case is not a "Case[]" (or a "Controvers[y]) if the plaintiff lacks standing. And we can't hear matters that aren't "Cases" or "Controversies." Under Article III of the Constitution, we lack jurisdiction over them.

So to evaluate our jurisdiction, today's case requires us to determine whether a person who receives an unwanted, automated telemarketing text message has standing to sue the sender. To establish standing, a plaintiff must show that she has suffered an

_____

* Senior Circuit Judge Tjoflat elected to participate in this decision, pursuant to 28 U.S.C. § 46(c). Judge Lagoa did not participate in this decision, as she is recused.

injury in fact, which the defendant likely caused and which a favorable decision can likely redress.  This case zooms in on standing's injury-in-fact component—a requirement that demands, among other things, that a plaintiff's injury be concrete.  The concreteness requirement ensures that the plaintiff has a real stake in the litigation.  Only when a plaintiff has that concrete stake in the lawsuit can she bring her claim in federal court.

Obvious concrete harms include physical injury and financial loss.  But intangible harms—an invasion of privacy, for example—may also satisfy the concreteness requirement.  Because Congress is well-suited to identify such harms, we find Congress's judgment instructive when it creates a cause of action for an intangible harm.  But Congress's judgment is not necessarily dispositive.  Once Congress identifies a harm by enacting a statute with a cause of action to redress that harm, we consider whether the statutory harm shares a "close relationship" with a harm that has traditionally provided a basis for a lawsuit in English or American courts.  If it does, then the plaintiff's alleged intangible harm satisfies standing's concreteness requirement.

The question at the core of this appeal is whether the plaintiffs who received a single unwanted, illegal telemarketing text message suffered a concrete injury.  To answer that question, we consider whether the harm from receiving such a text message shares a close relationship with a traditional harm.  The plaintiffs contend that it does—namely, with the harm that underlies a

lawsuit for the common-law claim of intrusion upon seclusion.  We agree.

Both harms reflect an intrusion into the peace and quiet in a realm that is private and personal.  A plaintiff who receives an unwanted, illegal text message suffers a concrete injury.  Because Drazen has endured a concrete injury, we remand this matter to the panel to consider the rest of the appeal.

## I.

### A.  District Court Proceedings

In August 2019, Suzan Drazen filed a class action against Go-Daddy.  The putative class alleged that the web-hosting company embarked on an unlawful telemarketing campaign.  According to the complaint, for about two years, between November 2014 and December 2016, GoDaddy used a prohibited automatic telephone dialing system[1] ("ATDS") "to make promotional calls and text messages attempting to sell additional or more expensive services and products and/or to contact individuals who are no longer customers."  In other words, the complaint asserted that GoDaddy violated the Telephone Consumer Protection Act of 1991 ("TCPA").  *See* 47 U.S.C. § 227(b)(1)(A)(iii).

---

[1] An "automatic telephone dialing system" refers to equipment with the capacity "to store or produce telephone numbers to be called, using a random or sequential number generator;" and the capacity "to dial such numbers."47 U.S.C. § 227(a)(1).

Meanwhile, Jason Bennett was litigating the same claim in the District of Arizona. *See Bennett v. GoDaddy.Com, LLC*, Case No. 2:16-cv-03908 (D. Ariz. 2016). And John Herrick filed a third case in the District of Arizona. *See Herrick v. GoDaddy.com, LLC*, Case No. 2:16-cv-00254 (D. Ariz. 2016).

The district court in Drazen's case eventually consolidated her case with Bennett's. And after Drazen and Bennett eventually reached a settlement agreement with GoDaddy, Herrick's case was "incorporated into and resolved by" the same settlement agreement.

Then, in January 2020, Drazen filed an unopposed motion for preliminary approval of that agreement. The settlement agreement defined the class to include "all persons within the United States who received a call or text message to his or her cellular phone from" GoDaddy between November 2014 and December 2016.

In response to this motion, the district court issued a sua sponte order "to examine its own jurisdiction." In that order, the court cited our decision in *Salcedo v. Hanna*, 936 F.3d 1162 (11th Cir. 2019), which held that the "receipt of a single text message" is not a concrete injury. *Id*. at 1172. Because the parties' settlement defined the class to include people who received only one text message, the district court ordered the parties to brief "how this case is distinguishable from *Salcedo v. Hanna*."

In their briefing, the parties proposed the following class definition, subject to certain exclusions that are not relevant here:

6                    Opinion of the Court                21-10199

> All persons within the United States to whom, from
> November 4, 2014[,] through December 31, 2016, De-
> fendant placed a voice or text message call to their cel-
> lular telephone pursuant to an outbound campaign
> facilitated by the web-based software application used
> by 3Seventy, Inc., or the software programs and plat-
> forms that comprise the Cisco Unified Communica-
> tions Manager.

GoDaddy determined that this "proposed settlement class includes approximately 1.26 million individuals."  And according to Go-Daddy, of that group, about 7% received only one text message. The balance of the class received either one phone call or some combination of phone calls and text messages.  As for the remedy for class members, the proposed settlement agreement offered "the choice between a $150 Voucher *or* a $35 cash award."

Upon considering the parties' briefing, the district court concluded that only the named plaintiffs must have standing.  And because Herrick received only one text, the district court determined, based on *Salcedo*, that he was disqualified from being a named plaintiff.  As for the roughly 91,000 other class members who also received only one text and therefore lacked a viable claim in this Circuit under *Salcedo*, the district court noted that "this is a nation-wide settlement" and opined that those class members "do have a viable claim in their respective Circuit."  For that reason, the district court reasoned that GoDaddy could "settle those claims in this class action" even though those litigants' claims were "meritless" in

this Circuit.[2] And if the parties agreed to remove Herrick as a class representative, the district court said, it would approve the proposed settlement agreement.

Class counsel then moved for $10,500,000 in fees—equal to 30% of the total $35 million settlement funds—and $105,410.51 in costs. The district court approved a fee award of $8,500,000, as well as an award of costs. Beyond that, the court awarded $5,000 each to Drazen, Bennett, and Herrick.

Objector-Appellant Juan Enrique Pinto then filed an objection and moved to reconsider the fee award. He made two arguments. First, he objected that the district court awarded fees to class counsel twenty days before the court's purported objection deadline. Second, he claimed that the parties' settlement was a "coupon settlement" under 28 U.S.C. § 1712(e) of the Class Action Fairness Act because GoDaddy class members could select Go-Daddy vouchers as their recompense.[3] The upshot of Pinto's

---

[2] We disagree. To begin, it's a misnomer to describe a litigant's claim as "meritless" because she lacks standing under our precedent. On the contrary, a dismissal for lack of subject-matter jurisdiction does not bar the plaintiff from pressing that same claim in another court where subject-matter jurisdiction exists. *See* Restatement (Second) of Judgments § 20(1)(a) (Am. L. Inst. 1982). In addition, it's worth emphasizing that district courts in this Circuit must apply our caselaw when addressing issues of federal law. *See, e.g.*, *McGinley v. Houston*, 361 F.3d 1328, 1331 (11th Cir. 2004). In any case, our ruling today moots this issue.

[3] *See* 28 U.S.C. § 1712(a) ("If a proposed settlement in a class action provides for a recovery of coupons to a class member, the portion of any attorney's fee award to class counsel that is attributable to the award of the coupons shall be

argument that the GoDaddy vouchers are subject to the Class Action Fairness Act is that, if he's right, a more complicated, and less lucrative, method of computing class counsel's award would apply. *See id*. § 1712(a), (e).

Addressing Pinto's first argument—that the district court prematurely awarded fees—the district court amended its order on fees "to correct and clarify that any assessment of attorneys' fees and costs were preliminary and subject to final review at the final approval hearing." And as it turned out, after that hearing, the court reconsidered its preliminary fee award and instead approved "attorneys' fees totaling 20% of the Settlement Fund, $7,000,000." The court then overruled Pinto's objections and approved the settlement agreement. In overruling Pinto's objections, the court said that "Pinto correctly points out that the 'Eleventh Circuit has yet to weigh in on what it deems a coupon' and 'coupon' is also not defined by CAFA." But ultimately, the court held that the settlement agreement did not involve "a coupon settlement as contemplated by CAFA."

---

based on the value to class members of the coupons that are redeemed."); *id*. § 1712(e) ("In a proposed settlement under which class members would be awarded coupons, the court may approve the proposed settlement only after a hearing to determine whether, and making a written finding that, the settlement is fair, reasonable, and adequate for class members. The court, in its discretion, may also require that a proposed settlement agreement provide for the distribution of a portion of the value of unclaimed coupons to 1 or more charitable or governmental organizations, as agreed to by the parties. The distribution and redemption of any proceeds under this subsection shall not be used to calculate attorneys' fees under this section.").

### B. Circuit Court Proceedings

Pinto then appealed, focusing solely on CAFA issues and the district court's approval of the class settlement. But the panel of this Court that was assigned the appeal did not address those arguments.

Rather, the panel dismissed the case for lack of jurisdiction. In the process, it noted the Supreme Court's admonition: "'Every class member must have Article III standing in order to recover individual damages.'" *Drazen v. Pinto*, 41 F.4th 1354, 1360 (11th Cir. 2022) (quoting *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2204–05, 2208 (2021)). Then, citing *Salcedo*, the panel held "that the class definition does not meet Article III standing requirements." *Id*. at 1359. As the panel explained, under *Salcedo*, "a single unwanted text message is not sufficient to meet the concrete injury requirement for standing." *Id*. at 1362. "So," the panel concluded, "the class definition cannot stand to the extent that it allows standing for individuals who received a single text message from GoDaddy." *Id*. As a result, the panel "vacate[d] the District Court's decision to grant final approval of the settlement and remand[ed] to give the parties an opportunity to revise the class definition." *Id*. at 1359.[4]

Plaintiff-Appellant Drazen then moved for rehearing en banc, urging us "to reevaluate the *Salcedo* holding and to clarify the

---

[4] The panel declined to decide "whether a single cellphone call is sufficient to meet the concrete injury requirement" and instead instructed the parties to "redefine the class with the benefit of *TransUnion* and its common-law analogue analysis" on remand. *Id*. at 1363.

law regarding the elements necessary to pursue a TCPA claim." We granted that motion.

## II.

We review *de novo* the threshold jurisdictional question of whether the plaintiffs enjoy standing to sue. *Muransky v. Godiva Chocolatier, Inc.*, 979 F.3d 917, 923 (11th Cir. 2020) (en banc).

## III.

Article III of the Constitution limits federal courts to deciding "Cases" and "Controversies." U.S. Const. art III, § 2. That "limitation 'is founded in concern about the proper—and properly limited—role of the courts in a democratic society.'" *Summers v. Earth Island Inst.*, 555 U.S. 488, 492–93 (2009) (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)). "The doctrine of standing is one of several doctrines that reflect this fundamental limitation." *Id*. at 493.

To enjoy standing, a plaintiff must satisfy three requirements. First, a plaintiff must establish that she suffered an injury in fact "that is concrete, particularized, and actual or imminent." *TransUnion*, 141 S. Ct. at 2203. Second, she must show that the defendant "likely caused" her injury. *Id*. And third, she must show that a favorable judicial decision can likely redress her injury. *Id*.

This case hinges on the concreteness requirement. "An injury is concrete if it actually exists—that is, if it is 'real, and not abstract.'" *Hunstein v. Preferred Collection & Mgmt. Servs., Inc.*, 48 F.4th 1236, 1242 (11th Cir. 2022) (en banc) (quoting *Spokeo, Inc. v.*

*Robbins*, 578 U.S. 330, 340 (2016)). "The most obvious concrete harm is a physical injury or financial loss." *Id*. at 1243.

But intangible harms can satisfy Article III's concreteness requirement, too. *Id*. "Congress is 'well positioned to identify' those intangible harms." *Id*. (quoting *Spokeo*, 578 U.S. at 341). So when Congress identifies an intangible harm by enacting a law with a cause of action to redress that harm, "we find its judgment 'instructive and important.'" *Ibid*. Yet at the same time, Congress "may not simply enact an injury into existence." *Id*. Nor can Congress use "'its lawmaking power to transform something that is not remotely harmful into something that is.'" *Id*. (quoting *TransUnion*, 141 S. Ct. at 2205). "So congressional judgment, though instructive, is not enough." *Id*.

At bottom, standing "is a doctrine rooted in the traditional understanding of a case or controversy." *Spokeo*, 578 U.S. at 338. So once Congress has identified an intangible harm, the question becomes whether that "'harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts.'" *Hunstein*, 48 F.4th at 1243 (quoting *Spokeo*, 578 U.S. at 341).

The Supreme Court has acknowledged the harm associated with the common-law tort of intrusion upon seclusion as an example of a harm "traditionally recognized as providing a basis for lawsuits in American courts." *TransUnion*, 141 S. Ct. at 2204. And Drazen and Pinto contend that the class members who received only one unwanted text message from GoDaddy suffered a privacy

invasion that shares a close relationship with the harm associated with intrusion upon seclusion.  In particular, the complaint alleges that the class members "suffered an invasion of a legally protected interest in privacy, which is specifically addressed and protected by the TCPA."[5]

GoDaddy responds that the harm from receiving one unwanted text message lacks a close relationship to the harm underlying intrusion upon seclusion because an element of that common-law tort requires that the privacy invasion "be highly offensive to a reasonable person."  Restatement (Second) of Torts § 652B (Am. L. Inst. 1965); *see also* W. Page Keeton et al., *Prosser & Keeton on the Law of Torts* 855 (5th ed. 1984).  And a single unwanted, illegal text message is not.  Calling someone two or three times, for example, is insufficiently offensive to state a claim under the common-law tort; "only when the telephone calls are repeated with such persistency and frequency as to amount to a course of hounding the plaintiff" does the intrusion rise to the degree of offensiveness that the common law requires.  Restatement (Second) of Torts, *supra*, § 652B cmt. d.  Because receiving one text message falls short of that

---

[5] GoDaddy contends that Congress has been silent on 47 U.S.C. § 227(b)(1)(a)(iii)'s applicability to text messages.  For the purposes of assessing our jurisdiction and without deciding the merits of the TCPA claim, we disagree and conclude that Congress appears to have targeted unwanted text messages (as well as unwanted phone messages) with the TCPA.  *See Cranor v. 5 Star Nutrition, L.L.C.*, 988 F.3d 686, 690–91 (5th Cir. 2021); *see also, e.g., Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016) ("A text message to a cellular phone, it is undisputed, qualifies as a 'call' within the compass of § 227(b)(1)(A)(iii).").

21-10199                Opinion of the Court                13

degree of harm, *see Salcedo*, 936 F.3d at 1171, GoDaddy contends that the class members who received only one text message did not suffer an injury that has a close relationship to the injury associated with intrusion upon seclusion.

We disagree.

To be sure, the relationship between the harms we compare is too attenuated when a plaintiff "completely fails to allege an element essential to the harm set out as a common-law comparator." *Hunstein*, 48 F.4th at 1249. But because the concreteness inquiry centers on whether the harms share "a close relationship," we do not require carbon copies; the new harm need only be "similar to" the old harm. *Id.* at 1242 (citations omitted); *see also TransUnion*, 141 S. Ct. at 2209 ("In looking to whether a plaintiff's asserted harm has a 'close relationship' to a harm traditionally recognized as providing a basis for lawsuit in American courts, we do not require an exact duplicate.").

To find the sweet spot between similar yet not identical, now-Justice Barrett has said that we should ask whether the harms share "a 'close relationship' in kind, not degree." *Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458, 462 (7th Cir. 2020) (Barrett, J.) (quoting *Spokeo*, 578 U.S. at 341), *cited with approval in TransUnion*, 141 S. Ct. at 2204; *see also Hunstein*, 48 F.4th at 1267 (Newsom, J., dissenting) (finding it "hard to imagine a circumstance in which a plaintiff's harm is similar in *both* 'kind' and 'degree' to a common-law tort and yet is *not* precisely the same").

That approach has become popular among our sister Circuits. Just as the Seventh Circuit focuses on kind but not degree, the Fourth, Fifth, Sixth, Ninth, and Tenth Circuits look to the "types of harms protected at common law, not the precise point at which those harms become actionable." *Krakauer v. Dish Network, LLC*, 925 F.3d 643, 654 (4th Cir. 2019); *accord Perez v. McCreary, Veselka, Bragg & Allen, P.C.*, 45 F.4th 816, 822 (5th Cir. 2022); *Ward v. NPAS, Inc.*, 63 F.4th 576, 580–81 (6th Cir. 2023); *Robins v. Spokeo, Inc.*, 867 F.3d 1108, 1115 (9th Cir. 2017); *Lupia v. Medicredit, Inc.*, 8 F.4th 1184, 1192 (10th Cir. 2021). The Second and Third Circuits similarly focus on the "character" of the new and old harms when determining whether the relationship is sufficiently close. *See Melito v. Experian Mktg. Sols., Inc.*, 923 F.3d 85, 93 (2d Cir. 2019); *Thorne v. Pep Boys Manny Moe & Jack, Inc.*, 980 F.3d 879, 890 (3d Cir. 2020) (citation omitted).

Following this approach, seven of our sister Circuits have declined to consider the *degree* of offensiveness required to state a claim for intrusion upon seclusion at common law. Instead, they have held that receiving either one or two unwanted texts or phone calls resembles the *kind* of harm associated with intrusion upon seclusion. *See Gadelhak*, 950 F.3d at 463 & n.2 (one unwanted text message); *Melito*, 923 F.3d at 93 (same); *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1042–43 (9th Cir. 2017) (two unwanted text messages); *Susinno v. Work Out World Inc.*, 862 F.3d 346, 351–52 (3d Cir. 2017) (one unwanted phone call); *Ward*, 63 F.4th at 581 (same); *Lupia*, 8 F.4th at 1192 (same); *Krakauer*, 925 F.3d at 652–653 (two unwanted phone calls in one year). In fact, even we have held

that receiving "more than one unwanted telemarketing call" causes a harm that bears "a close relationship to the kind of harm" that intrusion upon seclusion inflicts. *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1270 (11th Cir. 2019).

We think that asking whether the harms are similar in kind but not degree makes sense. Indeed, "Congress may 'elevate to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law.'" *Hunstein*, 48 F.4th at 1243 (quoting *Spokeo*, 578 U.S. at 341). And Congress's power to elevate harms to the status of legally cognizable injuries "implies that the level of harm required at common law 'does not stake out the limits of [its] power to identify harms deserving a remedy.'" *Perez*, 45 F.4th at 822 (alteration in original) (quoting *Gadelhak*, 950 F.3d at 463); *see also, e.g., Ward*, 63 F.4th at 581; *Hunstein*, 48 F.4th at 1256 (Pryor, C.J., concurring) ("Congress need not condition providing a remedy for reputational harm on the degree of offensiveness the common law required.").

Asking whether the harms are similar in kind also accords with our recent en banc decision in *Hunstein*. There, the plaintiff's alleged injury occurred when a creditor mailed personal information about his debt to a mail vendor. *Id*. at 1240. That injury, he argued, shared a close relationship to the harm suffered from the tort of public disclosure. *Id*. But an essential element of that tort is publicity, which entails the public disclosure of private information "'by communicating it to the public at large,'" *id*. at 1246 (quoting Restatement (Second) of Torts, *supra*, § 652D cmt. a). We

held that the debt-collector's disclosure of information about the plaintiff's debt to the mail vendor "lack[ed] the fundamental element of publicity." *Id.* at 1245. In reaching this conclusion, we reasoned that the element of publicity either exists or it does not; there is no in-between. *See id.* at 1249 (explaining that "we cannot analyze the degree" of publicity because "the difference between public and private is qualitative, not quantitative."). So the element of publicity was "completely missing." *Id.* at 1245. And we said that the plaintiff's alleged harm was not just "smaller in degree" than the common-law comparator—it was "entirely absent." *Id.* at 1249.

Here, by contrast, none of the elements for the common-law comparator tort are completely missing. Intrusion upon seclusion consists of an (i) intentional intrusion (ii) into another's solitude or seclusion, (iii) which would be highly offensive to a reasonable person. Restatement (Second) of Torts, *supra*, § 652B; *see also, e.g., Jackman v. Cebrink-Swartz*, 334 So. 3d 653, 656 (Fla. Dist. Ct. App. 2021). Unwanted phone calls, as we've noted, are among the privacy intrusions that give rise to liability for intrusion upon seclusion. *See* Restatement (Second) of Torts, *supra*, § 652B cmt. d; Keeton et al., *supra*, at 855. And as with "the unwanted ringing of a phone from a phone call," the "undesired buzzing of a cell phone from a text message . . . is an intrusion into peace and quiet in a realm that is private and personal." *Gadelhak*, 950 F.3d at 462 n.1.

To be sure, a single unwanted text message may not "be highly offensive to the ordinary reasonable man." Restatement (Second) of Torts, *supra*, § 652B cmt. d. Yet an unwanted text

message is nonetheless offensive to some degree to a reasonable person. Even GoDaddy conceded at oral argument that receiving one unwanted text message each day for thirty days would be enough to satisfy the offensiveness element. Oral Argument at 27:45–28:05; *see also* Restatement (Second) of Torts, *supra*, § 652B illus. 5.

And that concession is the whole ballgame. After all, the argument that thirty unwanted text messages in thirty days are enough but one is not is an argument of degree, not kind. If thirty are enough, then are twenty-nine? Are twenty-eight? How about two? Drawing the line necessarily requires us to make a choice of degree.

But the Constitution empowers Congress to decide what degree of harm is enough so long as that harm is similar in kind to a traditional harm. And that's exactly what Congress did in the TCPA when it provided a cause of action to redress the harm that unwanted telemarketing texts and phone calls cause. *See* 47 U.S.C. § 227(b)(1)(A)(iii). As our colleagues in the Third Circuit have recognized, "Congress was not inventing a new theory of injury when it enacted the TCPA." *Susinno*, 862 F.3d at 352. Rather, "Congress identified a modern relative of a harm with long common law roots." *Gadelhak*, 950 F.3d at 462.

In sum, then, we hold that the harm associated with an unwanted text message shares a close relationship with the harm underlying the tort of intrusion upon seclusion. Both harms represent "an intrusion into peace and quiet in a realm that is private and

personal." *Id*. at 462 n.1.  For that reason, the harms are similar in kind, and the receipt of an unwanted text message causes a concrete injury.  While an unwanted text message is insufficiently offensive to satisfy the common law's elements, Congress has used its lawmaking powers to recognize a lower quantum of injury necessary to bring a claim under the TCPA.  As a result, the plaintiffs' harm "is smaller in degree rather than entirely absent." *Hunstein*, 48 F.4th at 1249.

## IV.

Because we hold that the receipt of an unwanted text message causes a concrete injury, we **REMAND** this appeal to the panel to consider the CAFA issues raised in Pinto's appeal.

1                    JORDAN and NEWSOM, JJ., Concurring          21-10199

JORDAN and NEWSOM, Circuit Judges, Concurring:

We've been critical of this Court's standing jurisprudence – and the Supreme Court's too, for that matter. *See*, *e.g.*, *Hunstein v. Preferred Collection & Mgmt. Servs., Inc.*, 48 F.4th 1236, 1256 (11th Cir. 2022) (en banc) (Newsom, J., joined by Jordan, Rosenbaum, and Jill Pryor, JJ., dissenting); *Laufer v. Arpan, LLC*, 29 F.4th 1268, 1275 (11th Cir. 2022) (Jordan, J., concurring); *id.* at 1283 (Newsom, J., concurring); *Sierra v. City of Hallandale Beach*, 996 F.3d 1110, 1115 (11th Cir. 2021) (Newsom, J., concurring); *Muransky v. Godiva Chocolatier, Inc.*, 979 F.3d 917, 957 (11th Cir. 2020) (en banc) (Jordan, J., dissenting).  But we'll take what we can get, and we're pleased to concur in Judge Rosenbaum's excellent opinion for the en banc Court.

1                    BRANCH, J., Concurring                    21-10199

BRANCH, Circuit Judge, Concurring:

As the Supreme Court advised in *TransUnion LLC v. Ramirez*, for purposes of the comparator tort analysis we conduct when assessing Article III standing, the "close historical or common-law analogue for [a plaintiff's] asserted injury" need not be "an exact duplicate in American history and tradition." 141 S. Ct. 2190, 2204 (2021). We faithfully heeded this guidance in our en banc decision in *Hunstein v. Preferred Collection and Management Services, Inc.*, 48 F.4th 1236, 1242 (11th Cir. 2022) (en banc). Given these recent developments in the Article III standing analysis, I fully concur in the majority opinion.