**FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

————————————

No. 24-10895

————————————

NEW SOUTH MEDIA GROUP, LLC,
DEVERICK WILLIAMS,
WILLIAM WILSON,
RAINBOW POWDER COATINGS, INC.,

*Plaintiffs-Appellants,*

*versus*

CITY OF RAINBOW CITY, ALABAMA,

*Defendant-Appellee.*

————————————

Appeal from the United States District Court
for the Northern District of Alabama
D.C. Docket No. 4:22-cv-00461-CLM

————————————

Before BRANCH, ABUDU, and KIDD, Circuit Judges.

KIDD, Circuit Judge:

New South Media Group, LLC, sought to construct four different types of signs on private property. Rainbow City denied these applications because it determined that the signs were billboards, and the City has an ordinance prohibiting the construction of new billboards. So, is this appeal about the billboard ordinance that caused New South's injury—the denial of its applications? No. And therein lies the problem.

We find that the district court properly determined that the plaintiffs lack standing to sue in federal court, and we affirm its judgment.

## I.    BACKGROUND

New South builds and operates signs. Some might call them billboards. Deverick Williams and William Wilson are Alabama landowners who contracted with New South to post signs on their property that would be visible from the nearby highway. Rainbow Powder Coatings, Inc., is a local business that also uses signs to communicate with the public. For ease of reference, we will refer primarily to New South in this opinion, since the plaintiffs' claims are all the same.

New South sought permission from Rainbow City, Alabama, to erect four signs on behalf of other entities. Several municipal regulations governed the City's consideration. Section 212 requires permits for potential signs. Section 213 identifies types of signs exempt from the permitting requirement, including flags,

artistic displays, political signs, and special event signs. But Section 213 specifically notes that the exempted signs "are permitted in accordance with the standards contained within this section *and any other applicable provisions of these sign regulations.*" (emphasis added).

Importantly, Section 214 imposes a blanket prohibition on certain types of signs, including "[b]illboards." Section 211 defines "billboard" as "[a]ny sign owned by a person, corporation, or other entity that is erected for the purpose of selling, leasing, or donating the display space on that sign to an advertiser." An "advertiser" is "[a]ny person, corporation, or other entity that seeks to convey a visual or audio message to the public." Finally, subprovisions within Sections 212, 213, 214, 217, 363, and 366 each afford the City discretion in making decisions on permit and variance applications.

In short, if a sign is a "[b]illboard[]" under Section 214, then Section 213 and the other provisions have no application.

When submitting its permit applications for four signs featuring, respectively, flags, artwork, partisan political messages, and notices of upcoming events, New South believed the proposed signs fell within Section 213's exemptions to the City's permitting requirements for these types of signs. Three days after New South filed its applications, the City sent an email denying them as impermissible billboards. But the City misaddressed the email, so New South did not receive notice of the denial until approximately two months later.

Once it received the notice, New South sought variances for each proposed sign, which the City's zoning board did not approve. New South appealed the denials in state court and brought additional federal and state constitutional challenges. The parties dismissed the constitutional claims in state court, and New South subsequently brought them in federal court.

New South alleged that several of Rainbow City's sign regulations restrict speech in violation of both the First Amendment of the United States Constitution and Article I, Section 4, of the Alabama Constitution. *See* U.S. CONST. amend. I; ALA. CONST. art. I, § 4. First, New South alleged that Section 213 imposes an improper content-based framework that fails strict scrutiny. Second, it faulted the permit regulations for not imposing any time restriction on the City's decisions, resulting in an improper prior restraint on speech. Third, it argued that the regulations grant the City unbridled discretion to request factual details, reject sign applications, and reject variances without objective standards.

On summary judgment, the district court found that New South lacked standing to bring its First Amendment challenges and dismissed the case. New South subsequently appealed.

## II.    STANDARD OF REVIEW

We review grants of summary judgment de novo. *McCreight v. AuburnBank*, 117 F.4th 1322, 1329 (11th Cir. 2024). Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law." *Id.* (citation modified). At this stage, we view all evidence and draw all reasonable inferences in favor of the nonmoving party. *Id.*

We also review questions of standing de novo. *Muransky v. Godiva Chocolatier, Inc.*, 979 F.3d 917, 923 (11th Cir. 2020) (en banc).

## III.    DISCUSSION

The district court determined that New South lacked standing because Rainbow City denied the applications based on Section 214's billboard prohibition. New South does not challenge the constitutionality of that provision in this lawsuit. The court concluded that the challenged provisions were not causally linked to New South's alleged injury and that finding for New South would not redress the harm caused by the unchallenged billboard provision. It also declined to take up the factual question of whether the proposed signs were truly billboards under Section 214. We find no error in the district court's well-reasoned opinion.

### A.    *New South Lacks Standing To Sue Because the Unchallenged Billboard Prohibition Caused Its Injury.*

The doctrine of standing recognizes that "Article III of the Constitution limits federal courts to deciding 'Cases' and 'Controversies.'" *Drazen v. Pinto*, 74 F.4th 1336, 1342 (11th Cir. 2023) (en banc) (quoting U.S. CONST. art. III, § 2). If there is no case or controversy, federal courts have no power to hear a case. *Id.* at 1339. As the party invoking federal jurisdiction, New South must establish standing in federal court. *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2207 (2021). This requires showing: (1) that New South

suffered an injury in fact "that is concrete, particularized, and actual or imminent"; (2) that the City "likely caused" the injury; and (3) that a favorable judicial decision would likely redress the injury. *Drazen*, 74 F.4th at 1342 (citation modified).

We begin with New South's two overarching arguments for why it has standing to challenge the constitutionality of the *non*-billboard regulations: First, there is an alleged injury from the delayed denial of its permit applications after the City sent notice to the wrong email address. New South asserts that the absence of time limits on the City's permitting decisions resulted in an improper prior restraint without adequate procedural safeguards.

Second, New South believes that the City has too much discretion to make permitting and variance decisions, including decisions implicating Section 213's content-based exemptions. It contends, in part, that this unbridled discretion would not pass strict scrutiny, our most exacting standard for First Amendment restrictions.

But neither argument addresses the most fundamental problem with New South's case: the City denied the applications based on Section 214's billboard prohibition. The record shows this, and New South concedes it on appeal.

So New South cannot trace its injury to the provisions that it challenges. And even if we were to agree with New South that the challenged provisions are unconstitutional, that finding would not redress the actual source of New South's harm—the billboard prohibition. With or without the challenged regulations, the

unchallenged Section 214 would prohibit the proposed signs. Thus, New South cannot satisfy the second and third standing requirements of traceability and redressability. *See Drazen*, 74 F.4th at 1342. New South's arguments about the constitutionality of provisions that did not cause its injury cannot change that fact.

Our precedent supports this result. To begin, we have held that "the fact that [c]ity officials have an unlimited amount of time to decide whether to grant or deny a permit application," "by itself, does not create Article III standing." *Granite State Outdoor Advert., Inc. v. City of Clearwater*, 351 F.3d 1112, 1117 (11th Cir. 2003). In *Granite State*, the city denied the plaintiff's permit applications because the proposed signs violated the city's restriction on billboards. *See id.* at 1115. The plaintiff challenged the constitutionality of both the billboard prohibition motivating the denials and other provisions, including one that provided the city unlimited time to review permit applications. *Id.* We found standing to challenge the billboard regulation, which was responsible for "the only harm" that the plaintiff suffered, since it was the provision under which the "permits were denied." *See id.* at 1115, 1117. The plaintiff lacked standing to challenge the other provisions because they did not cause the injury. *See id.* at 1117–18.

This case is similar to *Granite State* except for one key difference: New South does not challenge the constitutionality of the billboard prohibition. Thus, *none* of the provisions that it challenges contributed to the City's denial of its applications, and this lack of a causal connection or redressability undermines any claim to

standing. *See Drazen*, 74 F.4th at 1342; *see also KH Outdoor, L.L.C. v. Clay Cnty.*, 482 F.3d 1299, 1303 (11th Cir. 2007) (finding no redressability, even if a challenged sign regulation caused a cognizable injury, "because the applications failed to meet the requirements of other statutes and regulations not challenged").

New South points us to *Solantic, LLC v. City of Neptune Beach*, where this Court determined that the absence of a time limit on a content-based permitting regulation unconstitutionally allowed city officials to curb disfavored speech. 410 F.3d 1250, 1271–72 (11th Cir. 2005). But in that case, the plaintiff challenged the actual content-based sign regulations upon which the city based its determination. *See id.* at 1252–53, 1258. New South chose not to challenge the content-neutral billboard prohibition that motivated the City's denial of its permit and variance applications.

New South's prior restraint and unbridled discretion arguments fare no better. For the former, "the plaintiff must establish that the challenged provision pertains to its activity, and not merely that it is 'subject to the law.'" *CAMP Legal Def. Fund, Inc. v. City of Atlanta*, 451 F.3d 1257, 1276 (11th Cir. 2006) (quoting *City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 755–56 (1988)). New South cannot simply claim that it would have been "subject to" the other regulatory provisions if it were not erecting a billboard for purposes of Section 214. *Id.* Those other provisions do not "pertain[] to" the billboard-based denials at issue here. *Id.*

Likewise, to have standing to make an unbridled discretion challenge, a party must be "subject to, . . . or imminently will be

subject to, the provisions that allegedly grant unbridled discretion" over expressive conduct. *Id.* at 1274 (citation modified). But because Section 214 completely bars the creation of new billboards, the City's denial under that regulation meant New South was subject to no other provision for the purposes of its injury.

Yet New South asserts that it has standing to make a facial challenge to the discretionary provisions under the overbreadth doctrine. This doctrine allows litigants to challenge a regulatory provision "not because their own rights of free expression are violated, but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression." *Id.* at 1270 (citation modified). But "[n]othing in the overbreadth doctrine allows [a plaintiff] to challenge provisions wholly unrelated to its activities." *Id.* at 1274. Rather, a plaintiff must establish that "every challenged provision affects" it to have standing under this doctrine. *Id.* The only provision that "affects" New South is the billboard prohibition. Again, there is no standing.

### B. *New South's Factual Challenge to the Billboard Determination Is Not Properly Before the Court.*

New South also argues that the record evidence does not support the City's determination that the challenged signs were "[b]illboards" under Section 214. It contends that the district court made this determination and did so incorrectly. But the district court made no such finding.

New South concedes that Rainbow City denied its permit and variance applications because the City determined that Section 214 prohibited the signs. The district court merely drew the same conclusion—that the City denied the permits and variances because it determined that the signs were billboards. The court explicitly refrained from ruling on the accuracy of this determination, suggesting that New South should challenge the City's reading of Section 214 in state court if it desired to do so.

We will not disturb that ruling. Not only did the district court refrain from ruling on the issue, but also New South's one-count complaint challenges only the constitutionality of the other regulations. This lawsuit simply does not reach the City's underlying billboard determination.

## IV.    CONCLUSION

Because New South lacks standing to bring its claims in federal court, we **AFFIRM** the district court's order granting summary judgment in part to Rainbow City, denying partial summary judgment to New South, and dismissing the case without prejudice for lack of jurisdiction.